# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**HAKO-MED USA, INC., et al.,**

      **Plaintiffs,**

**vs.**                                     **Case No.: 8:06-CV-1790-T-27EAJ**

**AXIOM WORLDWIDE, INC., et al.,**

      **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Before the court are Defendants' **Motion to Dismiss** (Dkt. 24), filed October 18, 2006, and Plaintiffs' **Response in Opposition** (Dkt. 28), filed October 20, 2006.[1] The court heard oral argument on the motion on October 26, 2006, during the evidentiary hearing on Plaintiffs' motion for preliminary injunction. For the reasons set forth below, the undersigned recommends that Defendants' motion to dismiss be denied.

### I.     Background and Procedural History

On September 28, 2006, Plaintiffs Hako-Med USA, Inc. ("Hako-Med USA") and Hako-Med GMBH, Inc. ("GMBH") filed a motion for injunctive relief and requested that this court enjoin Defendants Axiom Worldwide, Inc. ("Axiom"), James Gibson, Jr., President and Chief Executive Officer of Axiom ("Gibson"), and Nicolas Exarhos, Executive Vice President of Axiom ("Exarhos"), from continuing to market and/or sell Axiom's electrical nerve stimulation medical device entitled EPS8000/NVP8500 (Dkt. 2). Plaintiffs' lawsuit filed simultaneously with the motion for preliminary injunction asserted the following claims against Defendants: patent infringement in violation of

---

[1] The district judge referred this matter to the undersigned for consideration and a report and recommendation (Dkt. 30). <u>See</u> 28 U.S.C. § 636(c); Local Rules 6.01(b) and 6.01(c), M.D. Fla.

United States Patent Laws, 35 U.S.C. § 271, et seq.; trademark infringement arising under the Lanham Act, 15 U.S.C. § 1114; trade dress infringement in violation of section 43 of the Lanham Act, 15 U.S.C. § 1125(a); Racketeer Influenced and Corrupt Organization Act ("RICO") violations under 18 U.S.C. § 1962(c); tortious inference with contract and business relations; civil conspiracy to tortiously interfere with contract and business relations; malicious injury to Plaintiffs' business; and civil conspiracy to maliciously injure Plaintiffs' business (Dkt. 6).

Defendants moved to dismiss Plaintiffs' complaint and motion for preliminary injunction, asserting that neither Hako-Med nor GMBH had standing to bring the instant action because neither held legal title to the patent or trademark at issue prior to the filing of the lawsuit (Dkt. 24). On October 20, 2006, Plaintiffs filed an amended complaint, joining as plaintiffs Achim Hansjurgens, Ph.D. ("Dr. Hansjurgens") and E-MOS Civil Unlimited Corporation Fed Rep Germany ("E-MOS") (Dkt. 27). In response to Defendants' motion to dismiss, Plaintiffs argued that the filing of the amended complaint rendered the motion to dismiss moot because the joinder of Dr. Hansjurgens, the owner of the patent at issue, and E-MOS, the registrant of the trademark at issue, cured any jurisdictional defects (Dkt. 28).

Dr. Hansjurgens, a resident of Germany, is the holder of United States Patent No. 5,573,552 ("the '552 patent", attached as Ex. 1 to Plaintiffs' amended complaint), which was issued by the United States Patent Office on November 12, 1996. The patent is for an electrotherapeutic apparatus which purports to treat patients with various medical infirmities through electrical wave stimulation of nerves, muscles, and blood vessels.

Plaintiff GMBH is a privately owned German company established in 1991 by Dr. Hansjurgens and his former partner, Koch GMBH (Dkt. 4; Dkt. 27, at 3). Dr. Hansjurgens testified

2

that he is the president and sole owner of GMBH. In 2002, Kai Hansjurgens established Hako-Med

USA, an affiliate of GMBH which markets and sells the electrotherapeutic apparatus in the United

States (Dkt. 5; Dkt. 27, at 3). Hako-Med USA markets and sells the machine under the name

ProElecDT2000/VasoPulse2000.

Dr. Hansjurgens formed E-MOS under the corporate laws of Germany in 1993 and is the

president and sole owner of E-MOS. On October 3, 2000, the United States Patent and Trademark

Office issued E-MOS a certificate of registration for the mark VASOPULSE®, United States

Trademark Registration No. 2,390,719 ("the '719 mark", attached as Ex. 5 to Plaintiffs' amended

complaint). Hako-Med USA uses the VASOPULSE® name in marketing its product. Defendant

Axiom competes with Plaintiffs in the electromedicine care market.

## II.     Discussion

The burden of establishing standing rests on the party bringing the action. <u>Bischoff v.</u>

<u>Osceola County, Fla.</u>, 222 F.3d 874, 878 (11th Cir. 2000) (citation omitted). Standing is "both a

constitutional limitation on federal court jurisdiction and a prudential limitation on its exercise."

<u>Merial Ltd. v. Intervet, Inc.</u>, 430 F. Supp. 2d 1357, 1361 (N.D. Ga. 2006) (citation omitted).

Constitutional standing requires that the plaintiff satisfy three elements: (1) "the plaintiff must allege

that it has suffered an 'injury in fact'- an invasion of a legally protected interest"; (2) "there must be

a causal connection between the injury and the conduct complained of"; and (3) "it must be 'likely,'

as opposed to 'merely speculative,' that the injury will be 'redressed by a favorable decision.'"

<u>Paradise Creations, Inc. v. UV Sales, Inc.</u>, 315 F.3d 1304,1308 (Fed. Cir. 2003).

In addition to constitutional standing, the Patent Act controls standing to sue for patent

infringement. To have standing to bring a patent or trademark infringement claim, a plaintiff must

have held legal title to the patent or trademark prior to filing suit. See id. at 1309 (citations omitted).

Defendants brought a motion to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6), Federal Rules of Civil Procedure, alleging that Plaintiffs Hako-Med and GMBH did not have standing to file the instant action because neither held legal title to the patent or trademark prior to filing suit (Dkt. 24, at 1). According to Defendants, neither Dr. Hansjurgens, the owner of the '552 patent, nor E-MOS, the registrant of the '719 mark, had ever transferred or assigned the rights to the patent or trademark to Hako-Med or GMBH. (Id. at 3.) Additionally, Defendants argue that in a patent infringement case, jurisdictional defects cannot be cured after the filing of the suit, and therefore, Hako-Med USA and GMBH cannot cure standing defects through the joinder of Dr. Hansjurgens and E-MOS as plaintiffs to the action.

At this juncture, the court finds it necessary to identify which subsection of Rule 12(b) is applicable to the instant motion because that determination governs the court's treatment of the motion. Under Rule 12(b)(6), "when a party files a motion to dismiss for failure to state a claim, the district court is instructed to treat the motion as one for summary judgment if either party submits additional materials 'outside the pleadings.'" Haase v. Sessions, 835 F.2d 902, 905 (D.C. Cir. 1987). However, this "conversion feature" is not applicable to the other subsections of Rule 12(b). Id. at 905-06. In Rule 12(b)(1) proceedings, as opposed to Rule 12(b)(6) proceedings, "it has long been accepted that the judiciary make may 'appropriate inquiry' beyond the pleadings to 'satisfy itself on the authority to entertain the case.'" Id. at 906 (citation omitted). This is because Rule 12(b)(6) "presents a ruling on the merits with res judicata effect," where Rule 12(b)(1) "presents a threshold challenge to the court's jurisdiction." Id.

Here, Defendants' motion clearly and unequivocally seeks dismissal for lack of standing.

Because standing is a defect in subject matter jurisdiction, the court finds that Defendants' seek dismissal of the complaint pursuant to Rule 12(b)(1). As such, the court may consider material "outside the pleadings" in ruling on the motion, including documents filed by Defendants in support of their motion and testimony given at the evidentiary hearing. See Bischoff, 222 F.3d at 878 (when there is a standing challenge in the form of a motion to dismiss, the court may look beyond the pleadings in conducting a factual inquiry).

Furthermore, in considering a motion to dismiss for lack of standing, "the court must accept as true all of the plaintiff's material allegations," and "disputed facts must be construed in the light most favorable to the plaintiff." Id. at 878, 879 (citations omitted).

A.   Patent Infringement Claim

Under the Patent Act, only a "patentee" has standing to bring suit for patent infringement. See Prima Tek II, LLC v. A-Roo Co., 222 F.3d 1372, 1376-77 (Fed. Cir. 2000); Mentor H/S, Inc. v. Med. Device Alliance, Inc., 240 F.3d 1016, 1017 (Fed. Cir. 2001). The Act defines a "patentee" as "not only the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. § 100(d).   However, because an exclusive license is equivalent to an assignment, standing is conferred on an exclusive licensee to bring suit in its own name if the exclusive licensee holds "all substantial rights" to the patent. See Prima Tek II, 222 F.3d at 1377; Mentor H/S, 240 F.3d at 1017.  "An exclusive licensee *without* all substantial rights in the patent has standing to sue third parties only as a co-plaintiff with the patentee." Nat'l Licensing Ass'n, LLC v. Inland Joseph Fruit Co., 361 F. Supp. 2d 1244, 1250 (E.D. Wash. 2004) (citation omitted and emphasis in original). To have standing as a co-plaintiff, "a licensee must hold some of the proprietary sticks from the bundle of patent rights, albeit a lesser share of rights in the patent than

for an assignment and standing to sue alone." <u>Ortho Pharm. Corp. v. Genetics Inst., Inc.</u>, 52 F.3d 1026, 1031 (Fed. Cir.), <u>cert. denied</u>, 516 U.S. 907 (1995).

Conversely, a "bare licensee," a non-exclusive licensee or one with no interest in the patent, has no standing to bring suit or join in a suit with the patentee because although it may suffer economic injury as a result of the infringement, it suffers no legal injury. <u>Id.</u> Therefore, this court must determine whether the original plaintiffs Hako-Med USA and GMBH held enough beneficial proprietary interest in the patent at the time the lawsuit was filed to confer standing to sue in either their own names or as a co-plaintiff with the patentee.

In addition to the affidavits and testimony of Dr. Hansjurgens and Kai Hansjurgens, before the court are several documents that purport to establish Hako-Med USA's and GMBH's rights in the '552 patent: the "Exclusive Distribution, License to Use Intellectual Property, License to Manufacture Agreement" between Kai Hansjurgens for Hako-Med USA and Dr. Hansjurgens for GMBH and E-Mos dated December 14, 2002 (Dkt. 24, Attach. 8); the undated "Exclusive Distributor Agreement" between Kai Hansjurgens for Alive, Inc. and Dr. Hansjurgens for GMBH (<u>Id.</u>); and the "Licensing Agreement" between E-MOS and GMBH dated November 21, 1991 (<u>Id.</u>). While Plaintiffs submit that these documents grant Hako-Med USA exclusive rights to use all of GMBH's, E-MOS', and Dr. Hansjurgens' intellectual property in the United States, including the '552 patent and '719 registration, Defendants contend that these documents are merely distributorship agreements and not sufficient to convey ownership of a patent or trademark registration (Dkt. 24, at 5).

"Whether a transfer is an assignment or a license does not depend upon the name by which it calls itself but upon the legal effect of its provisions." <u>Merial Ltd.</u>, 430 F. Supp. 2d at 1361.  A

transfer of proprietary patent rights must be in writing.  See Mentor H/S, 240 F.3d at 1017 (citation omitted). To determine whether all substantial rights have been conveyed, the court must examine the substance of the rights that were granted and determine the parties' intent in entering into the agreement. See Merial Ltd., 430 F. Supp. 2d at 1361-62; Prima Tek II, 222 F.3d 1378.

The relevant document here is the "Exclusive Distribution, License to Use Intellectual Property, License to Manufacture Agreement," dated December 14, 2002 (Dkt. 24, Attach. 8). The agreement states that "HAKO-MED GmbH and E-MOS grant exclusive license to HAKO-MED USA Inc. to manufacture and assemble products in the United States under Its [sic] patents and trademarks." The document further provides that "HAKO-MED GmbH and E-mos grant HAKO-MED USA Inc. the exclusive rights to use all of its intellectual property in the territory described below." The agreement also states that Hako-Med USA will compensate GMBH and E-MOS $1,000.00 per unit sold for "use of intellectual property and license to manufacture" in the territory of the United States, Canada, Mexico, and South America. The "unit" is referred to as the PROElecDT series including VasoPulse and cart, and the ElecDT series including VasoPulse and cart.

While the agreement does not specifically refer to the '552 patent, the court disagrees with Defendants that the document is merely a distributorship agreement and does not confer any rights in the patent. Given the nature of the relationship between the patentee Dr. Hansjurgens, his companies GMBH and E-MOS, and Hako-Med USA,[2] there is enough indicia of reliability within the agreement to find that it covers the '552 patent. First, Dr. Hansjurgens testified, and his affidavit

--------

[2] Dr. Hansjurgens, the patentee, testified that he is the sole owner and president of both GMBH and E-MOS, and that he is the father of Kai Hansjurgens, President of Hako-Med USA.

states, that GMBH and its affiliates are the owners of all right, title, and interest in the '552 patent. Dr. Hansjurgens also testified that under German law, the structure of GMBH and E-MOS are such that he and each company are one and the same, thereby suggesting that he and his companies would share the same rights as to their intellectual property.[3] Because the court must accept Plaintiffs' material allegations as true at the motion to dismiss stage, the court cannot find that GMBH has no rights in the patent.

As to Plaintiff Hako-Med USA, the agreement here grants it the *exclusive license* to manufacture and assemble products under the patentee's patents and trademarks and grants Hako-Med USA the *exclusive rights to use* all of the patentee's intellectual property. See State Contracting & Eng'g Corp. v. Condotte Am., Inc., 346 F.3d 1057, 1062-63 (Fed. Cir. 2003) (citation omitted) (although contract omitted language explicitly assigning the patents, the contract's transfer of the "entire right title and interest in the inventions" constituted an assignment because it transferred the "exclusive right to make, use, and vend the invention through the United States"). Based on the language in the agreement and the testimony at the hearing of the parties to the agreement, the court finds that the parties intended create a assignment of rights that would render Hako-Med USA the exclusive licensee of the patent and trademark at issue.

However, the court finds that the agreement was insufficient to transfer "all substantial rights" in the patent so that the exclusive licensee could bring suit in its name alone. Hako-Med USA

---

[3] The court observes that the parties have not suggested any choice of law issues regarding indicia of ownership as to proprietary rights of intellectual property or transfer of these rights. Similarly, Defendants did not present any evidence to contradict Dr. Hansjurgens' assertions regarding corporate structures under German law. The court merely observes that for the purposes of this motion to dismiss, it must rely on Plaintiffs' assertions that GMBH has a proprietary interest in the patent.

does not hold an exclusive license to *all* rights secured by the patent. Essential rights that the court should examine are "the right of exclusivity, the right to transfer and most importantly the right to sue infringers."[4] Biagro W. Sales, Inc. v. Helena Chem. Co., 160 F. Supp. 2d 1136, 1144 (E.D. Cal. 2001) (citations omitted). The court should also consider the rights that the patentee reserved for himself. See State Contracting, 346 F.3d at 1063 (citation omitted). "[A] licensee is an exclusive licensee only if the patentee has promised, expressly or impliedly, that 'others shall be included from practicing the invention' within the field covered by the license." Biagro W. Sales, 160 F. Supp. 2d at 1144 (citing Rite-Hite Corp. v. Kelley Co., Inc., 56 F.3d 1538, 1552 (Fed. Cir.), cert. denied, 516 U.S. 867 (1995)).

Here, while the agreement does purport to grant the right of exclusivity to Hako-Med USA, the agreement does not expressly grant Hako-Med USA the right of transfer or the right to sue. However, the agreement is silent as to whether the patentee reserved these rights. Also absent from the agreement is whether Hako-Med USA could assign its interest in the patent without the permission of the patentee or whether Hako-Med USA could commence an infringement action without first notifying the patentee. See Calgon Corp. v. Nalco Chem. Co., 726 F. Supp. 983, 986-87 (D. Del. 1989) (licensee was found not to stand on "equal footing" with patentee when licensee could not sue without first offering the patentee the opportunity to bring action in the patentee's own name).

What the agreement does implicitly and somewhat expressly state is that Hako-Med USA

---

[4] At least one court has found that "while the right to sue infringers is one of the important enumerated indicia of patent ownership," that interest, standing alone without the transfer of any proprietary interests in the patent such as the exclusive right to make, use, or sell, is insufficient to confer standing on a plaintiff. Nat'l Licensing Ass'n, 361 F. Supp. 2d. at 1253.

is the only company that may use the patentee's patented and trademarked technology in the United States, to the exclusion of all others. There is no evidence before the court that the patentee has granted licenses to any other parties in the United States to use his patent. Furthermore, the memorialization of the agreement is in writing, which is one of the requirements for a valid assignment of patent rights. See Merial Ltd., 430 F. Supp. 2d at 1362 ("While a license may be oral, if the license is going to be considered a virtual assignment [of patent rights], it must be in writing."). Considering the evidence before the court and the testimony at the hearing, the court finds that Hako-Med USA is an exclusive licensee with some, but not all, substantial rights to the patent.

In the situation of a transfer of some, but not all, substantial rights, the patent owner should be joined, "either voluntarily or involuntarily, in any infringement suit brought by an exclusive licensee."[5] Prima Tek II, 222 F.3d at 1377 (citation omitted). Plaintiffs have joined Dr. Hansjurgens

---

[5] Defendants argue that the addition of the patentee after the filing of the suit cannot retroactively cure a standing defect. The Federal Circuit has held that a plaintiff with no enforceable rights whatsoever in the patent at the time the suit is filed lacks constitutional standing and that this jurisdictional defect cannot be cured by joining the patentee in the action. See Paradise Creations, 315 F.3d at 1310. However, if the original plaintiff had constitutional standing, any prudential standing concerns may be overcome by joining a plaintiff with proper standing. Schreiber Foods, Inc. v. Beatrice Cheese, Inc., 402 F.3d 1198, 1203 n.4 (Fed. Cir. 2005) (if the original plaintiff lacks constitutional standing, the suit must be dismissed, but if the original plaintiff had constitutional standing, any prudential standing concerns may be overcome by adding a plaintiff with proper standing) (citations omitted).
In Mentor H/S, the Federal Circuit held that based on the plaintiff's exclusive license to the patent, the plaintiff had a cognizable injury at the inception of the suit for purposes of constitutional standing. See Paradise Creations, 315 F.3d at 1310. Thus, even though the plaintiff had less than all substantial rights in the patent, it could cure the standing defect through the joinder of the patentee as a plaintiff. Id. See also Kalman v. Berlyn Corp., 914 F.2d 1473, 1481-82 (Fed. Cir. 1990), sugg'n for reh'g en banc declined, (1991) (where a sole licensee has shown that it is directly damaged, and the nexus between the sole licensee and the patentee is clearly defined, the licensee must be recognized as the real party in interest to the action). Because, as discussed above, the court finds that the original plaintiffs have some proprietary rights in the patent, constitutional standing was present at the inception of the action.

and E-MOS through their timely filed amended complaint. Dr. Hansjurgens testified at the hearing

that his and E-MOS' joinder was voluntary. Because Hako-Med USA and GMBH have more rights

than just a "bare licensee" and therefore have standing to sue as co-plaintiffs, dismissal is not

warranted. See Duplan Corp. v. Deering Milliken Research Corp., 522 F.2d 809, 814 (4th Cir. 1975)

(consolidating the claims of the patent owner and the exclusive-use licensee in a single suit was

appropriate to prevent a "multiplicity of suits"). Therefore, Defendants' motion to dismiss should

be denied as to the patent infringement claim.

      B.    Trademark Infringement Claim

      The "registrant" of a trademark has standing to assert a trademark infringement claim under

the Lanham Act. 15 U.S.C. § 1114(1). Similar to the definition of a patentee, the definition of a

registrant includes its "legal representatives, predecessors, successors and assigns." Id. at § 1127.

Similar to the standing argument on the patent infringement claim, Defendants argue that Plaintiffs

did not have standing to bring the trademark infringement claim because they never held title to the

'719 registration prior to the filing of this action.

      As with standing analysis in patent infringement cases, "the determination of whether a

licensee has standing to sue under [15 U.S.C.] § 1114 largely depends on the rights granted to the

licensee in the licensing agreement. Where the license is non-exclusive the licensee does not have

standing to bring an infringement action." Ultrapure Sys., Inc. v. Ham-Let Group, 921 F. Supp. 659,

665 (N.D. Cal. 1996) (citation omitted). See also BMW of N. Am., Inc. v. Au-tomotive Gold, Inc.,

No. 96-384-Civ-J-20, 1996 U.S. Dist. Lexis 22828, * 7-8 (M.D. Fla. June 19, 1996) (several courts

have recognized that exclusive licensees may sue for injunctive relief under section 1114(1), but the

right has not been extended to non-exclusive licensees) (citations omitted). If the contract provisions

provide that the licensor retains exclusive ownership of the mark, the licensee lacks standing to bring an infringement action. Ultrapure Sys., 921 F. Supp. at 665 (citation omitted).

Here, E-MOS is the registrant of the VASOPULSE® mark at issue. Unlike the situation in BMW of N. Am., supra, where the plaintiff offered no proof regarding the terms of a relationship between itself and the trademark registrant, here Plaintiffs are parties to the Exclusive Distribution and Licensing Agreement discussed above (Dkt. 24, Attach. 8). In the agreement, Dr. Hansjurgens, President of E-MOS, specifically grants Hako-Med USA the exclusive use of "all of its intellectual property" in the United States, including the trademark. While the agreement does not grant Hako-Med USA the specific ability to enforce the trademark rights, neither does it restrict the ability to enforce. Further, the agreement is silent as to whether the registrant retained any ownership of the mark.

The court finds that, similar to the standing analysis above on the patent claim, Hako-Med USA has a property interest in E-MOS' trademark as an exclusive licensee. Therefore, Hako-Med USA does have standing to enforce the VASOPULSE® mark against Defendants. See Ultrapure Sys., 921 F. Supp. at 665-66 (exclusive licensee did have property interest in the trademark and therefore qualified as an assignee or successor of the registrant). The court recommends that the motion to dismiss be denied as to the trademark infringement claim.

C.    Trade Dress Infringement

Under section 43(a) of the Lanham Act, "a plaintiff need not be the owner of a registered trademark in order to have standing to sue" and can assert a section 43(a) claim against third parties. Gruen Mktg. Corp. v. Benrus Watch Co., Inc., 955 F. Supp. 979, 983 (N.D. Ill. 1997) (citation omitted). As long as a plaintiff can show proof of a proprietary right, or that it has a "commercial

interest" to protect, section 43(a) allows suit "by any person who believes that he or she is likely to be damaged" by a prohibited act. Id. at 984; 15 U.S.C. § 1125(a).

As discussed above, the court finds that Hako-Med USA possesses at least a license to use the VASOPULSE® mark under the terms of the Exclusive Distribution agreement (Dkt. 24, Attach. 8). Therefore, Plaintiffs have standing to bring suit against Defendants under section 43(a) of the Lanham Act.

## III.   Conclusion

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1)   Defendants' Motion to Dismiss (Dkt. 24) be **DENIED**.

**DONE AND ORDERED** in Tampa, Florida this 15th day of November, 2006.


ELIZABETH A JENKINS
United States Magistrate Judge


### NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of this service shall bar an aggrieved party from

attacking the factual findings on appeal. <u>See</u> 28 U.S.C. § 636(b)(1).


Copies to:
District Judge
Counsel of Record