**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**HAKO-MED USA, INC., et al.,**

> **Plaintiffs,**

**vs.**                                                                **Case No.: 8:06-CV-1790-T-27EAJ**

**AXIOM WORLDWIDE, INC., et al.,**

> **Defendants.**

_____/

**REPORT AND RECOMMENDATION**

Before the court are Plaintiffs' **Motion for Preliminary Injunction** (Dkt. 2), filed September 28, 2006, and Defendants' **Response in Opposition** (Dkt. 33), filed October 23, 2006.[1] The court held an evidentiary hearing on the motion on October 26, 2006. For the reasons set forth below, the undersigned recommends that Plaintiffs' motion for preliminary injunction be granted as to the trademark infringement claim and denied as to the patent infringement and trade dress infringement claims.

**I.      Background and Procedural History**

On September 28, 2006, Plaintiffs Hako-Med USA, Inc. ("Hako-Med USA") and Hako-Med GMBH, Inc. ("GMBH") filed the instant motion for injunctive relief and requested that this court enjoin Defendants Axiom Worldwide, Inc. ("Axiom"), James Gibson, Jr., President and Chief Executive Officer of Axiom ("Gibson"), and Nicolas Exarhos, Executive Vice President of Axiom ("Exarhos"), from continuing to market and/or sell Axiom's electrical nerve stimulation medical device entitled EPS8000/NVP8500 (Dkt. 2). Plaintiffs' lawsuit filed simultaneously with the motion

---

[1] The district judge referred this matter to the undersigned for consideration and a report and recommendation (Dkts. 8, 30). See 28 U.S.C. § 636(c); Local Rules 6.01(b) and 6.01(c), M.D. Fla.

for preliminary injunction asserted the following claims against Defendants: patent infringement in violation of United States Patent Laws, 35 U.S.C. § 271, et seq.; trademark infringement arising under the Lanham Act, 15 U.S.C. § 1114; trade dress infringement in violation of section 43 of the Lanham Act, 15 U.S.C. § 1125(a); Racketeer Influenced and Corrupt Organization Act ("RICO") violations under 18 U.S.C. § 1962(c); tortious inference with contract and business relations; civil conspiracy to tortiously interfere with contract and business relations; malicious injury to Plaintiffs' business; and civil conspiracy to maliciously injure Plaintiffs' business (Dkt. 6).[2]

Before filing a responsive pleading, Defendants moved to dismiss Plaintiffs' complaint and motion for preliminary injunction, asserting that Hako-Med USA and GMBH did not have standing to bring the instant action because neither held legal title to the patent or trademark at issue prior to the filing of the lawsuit (Dkt. 24).[3]  On October 20, 2006, Plaintiffs filed an amended complaint, joining as plaintiffs Achim Hansjurgens, Ph.D. ("Dr. Hansjurgens") and E-MOS Civil Unlimited Corporation Fed Rep Germany ("E-MOS") (Dkt. 27).

The court held an evidentiary hearing on the motion for preliminary injunction on October 26, 2006 ("the hearing"). Plaintiffs submitted evidence at the hearing and relied on the testimony of Dr. Hansjurgens and Kai Hansjurgens, President of Hako-Med USA. In addition to relying on its briefs, Defendants called Barry N. Feinberg, Ph.D., P.E. ("Dr. Feinberg") and Gary Dixon, Vice President of Sales and Marketing for Axiom ("Dixon") to testify at the hearing.

## II.      Findings of Fact

---

[2] No argument was asserted, however, at the preliminary injunction hearing as to relief sought on the state law claims or the federal RICO claim.

[3] As set forth in a separate order, this court recommends that Defendants' motion to dismiss be denied.

Dr. Hansjurgens, a resident of Germany, is the holder of United States Patent No. 5,573,552 ("the '552 patent", attached as Ex. 1 to Plaintiffs' amended complaint), which was issued by the United States Patent Office on November 12, 1996. The patent is for an electrotherapeutic apparatus which "operates in the medium frequency range between 1000 Hz and 100,000 Hz, with paired, diametrically opposed electrodes applied in relation to a body part to be treated." (Amended Compl., Ex. 1). Physicians use electrotherapy machines such as the one described in the patent to treat patients with various medical infirmities; the primary market for these machines consists of medical doctors and chiropractors. The patent describes the effects of the electrical stimulation device as pain alleviation, stimulation of striated and nonstriated muscles, influencing perfusion, the detumescent mechanisms, the checking of inflammatory processes, and promoting regeneration of, for example, wounds and accelerated healing of bones. (Id.)

Plaintiff GMBH is a privately owned German company established in 1991 by Dr. Hansjurgens and his former partner, Koch GMBH (Dkt. 4; Dkt. 27, at 3). In 2002, Kai Hansjurgens established Hako-Med USA, an affiliate of GMBH which markets and sells the electrotherapeutic apparatus in the United States (Dkt. 5; Dkt. 27, at 3). Plaintiffs refer to the device's technology as internationally patented "Horizontal Therapy," which is the core of Plaintiffs' product and what makes Plaintiffs' product stand out in the niche industry of electromedicine. Plaintiffs market and sell this technology in the form of a machine called the ProElecDT2000/VasoPulse2000.

Dr. Hansjurgens testified that he formed E-MOS under the corporate laws of Germany in 1993. According to Dr. Hansjurgens, E-MOS' structure is similar to what is recognized in the United States as a sole proprietorship, and Dr. Hansjurgens is the sole owner and participant in E-MOS. On October 3, 2000, the United States Patent and Trademark Office issued E-MOS a certificate of

3

registration for the mark VASOPULSE®, United States Trademark Registration No. 2,390,719 ("the '719 mark", attached as Ex. 5 to Plaintiffs' amended complaint). Hako-Med USA uses the VASOPULSE® name in marketing its electrotherapy product.

Defendant Axiom competes with Plaintiffs in the electromedicine care market. According to Dixon's testimony, Defendants began marketing and selling their EPS8000/NVP8500 product on July 28, 2005. Defendants' machine directly competes with Plaintiffs' machine for the same share of the electrotherapy market.

The '552 patent has 12 claims. Plaintiffs assert claims 1, 3, and 5 against Defendants. Claim 1 reads:

> 1. An apparatus for electrotherapeutic applications operating in a medium-frequency range between 1000 Hz and 100,000 Hz comprising;
>
> a circuit capable of generating a medium-frequency current of constant amplitude;
>
> a modulator operatively coupled to said circuit and capable of frequency modulating the medium frequency output of said circuit;
>
> two electrodes operatively coupled to said circuit to receive the modulated output of said circuit, the modulated output having a modulation interval of one thousand to several thousand Hz (corner frequencies) with a modulation frequency of >0 to several hundred Hz (for instance 200 Hz) in order to generate in synchronism with the modulation frequency action potentials in the treatment area.

Claim 3 reads as follows:

> 3. Electrotherapeutic apparatus according to claim 2, characterized in that said modulation frequency and/or said modulation frequency, viewed over the treatment time, are variable.

Claim 5 reads as follows:

> 5. Electrotherapeutic apparatus according to claim 2, characterized in that a plurality of said circuits are applied by way of two electrodes each, in such a way that the currents intersect in the treatment area, the frequency of the currents being equal or differing by an amount between >0 to about 200 Hz.

(Pls.' Ex. 1). Plaintiffs concede that claims 3 and 5 are dependent on claim 1; if there is no infringement on claim 1 then there can be no infringement on claims 3 and 5.

On September 16, 2005, the law firm for Hako-Med USA wrote a cease and desist letter to Gibson and Axiom, stating that Axiom's use of the VASOPULSE® mark in conjunction with its advertising of its EPS8000 product infringed on Hako-Med USA's trademark rights, and demanding that Axiom immediately cease and desist from all use of the VASOPULSE® mark, account for all quantities of products bearing the mark that had already been sold, destroy all remaining inventory of any advertising bearing the mark, and set forth all profits obtained from and after the first sale of the product bearing the mark. (Pls.' Ex. 13). In response to the cease and desist letter, Axiom filed a petition to cancel the '719 mark, asserting that the mark is deceptively misdescriptive. (Id.)

In this action, Plaintiffs allege that Axiom's EPS8000/NVP8500 product infringes on claims one, three, and five of the '552 patent because the product embodies Plaintiffs' patented Horizontal Therapy, and therefore request that Defendants be enjoined from selling the product. Plaintiffs also contend that Defendants' marketing and selling of their machine as the "Neuro Vaso Pulse" 8500 infringes upon Plaintiffs' exclusive use of the '719 registration and the VASOPULSE® mark. Finally, Plaintiffs also allege that Axiom's product infringes on Plaintiffs' product's trade dress.

## III.    Preliminary Injunction Standard

The district court has the sound discretion to grant or deny a request for preliminary injunction. Palmer v. Braun, 287 F.3d 1325, 1329 (11th Cir. 2002) (citations omitted). In order for the court to issue a preliminary injunction, the moving party must show: 1) a substantial likelihood of success on the merits; 2) that the moving party will suffer irreparable injury if the injunction is not issued; c) that the threatened injury to the moving party outweighs the potential damage that the

proposed injunction may cause the non-moving party; and d) that the injunction will not be adverse to the public interest. Fed. R. Civ. P. 65; General Motors Corp. v. Phat Cat Carts, Inc., No. 8:06-CV-900-T-24MSS, 2006 WL 2982869, at * 3 (M.D. Fla. Oct. 18, 2006) (citations omitted). An injunction is an extraordinary remedy which should not be issued "unless the movant 'clearly carries the burden of persuasion' as to the four prerequisites." Glen Raven Mills, Inc. v. Ramada Int'l, Inc., 852 F. Supp. 1544, 1547 (M.D. Fla. 1994) (citations omitted).

In considering these factors, the court must "delicate[ly] balance[] the probabilities of ultimate success at final hearing with the consequences of immediate irreparable injury which could possibly flow from the denial of preliminary relief." Siegal v. LePore, 234 F.3d 1163, 1178 (11th Cir. 2000) (citations and quotations omitted). "These factors, taken individually, are not dispositive; rather, the district court must weigh and measure each factor against the other factors and against the form and magnitude of the relief requested." Amazon.com, Inc. v. BarnesandNoble.com, Inc., 239 F.3d 1343, 1350 (Fed. Cir. 2001) (citation and quotations omitted).

## IV.   Conclusions of Law

### A.   Patent Infringement Claim

The court has the power to grant an injunction to prevent the violation of a patent right under 35 U.S.C. § 283. P.N.A. Const. Techs., Inc. v. McTech Group, Inc., 414 F. Supp. 2d 1228, 1235 (N.D. Ga. 2006). Plaintiffs allege that Axiom has literally infringed on the '552 patent because:

> (1) Axiom has copied the "sweep rate" of Claim One (1) of the 552 patent, with frequencies between 0,1 Hz and 200 Hz;
> (2) Axiom has infringed upon the 552 patent by copying claims one (1) and three (3) in which the Plaintiff claims that the carrier frequencies and the modulation frequency are variable; and
> (3) Axiom has infringed upon the 552 patent by copying the fifth (5th) claim of the 552 patent as the Plaintiff claims that their patented MF-modulation technology can be used with not only one current path (two electrodes) but also with two (2) current

6

paths (four electrodes) like Interferential, IF or more.

(Dkt. 7, at 4; Dkts. 4, 5). Plaintiffs also allege that at the very least, the accused device infringes on the patent based on the doctrine of equivalents because Axiom has made insubstantial changes to the EPS8000/NVP8500 when compared to Plaintiffs' ProElectDT2000 and VasoPulse 2000.

Defendants argue that Plaintiffs have failed to make the required threshold showing of patent infringement at the preliminary injunction stage by neither providing a proposed claim construction for any of the limitations of the asserted claims nor providing any comparison of the claims to the accused product itself. Defendants allege that a comparison of the limitations in the asserted claims to the accused product itself is necessary to show that the product includes each and every limitation of the asserted claims of the '552 patent, either literally or by the doctrine of equivalents. At the hearing, Plaintiffs argued that claim construction was not necessary at the preliminary injunction stage and presented no evidence as to claim construction.[4]

At this stage, the court should not grant a preliminary injunction as to the patent infringement claim unless Plaintiffs have established both a likelihood of success on the merits and irreparable harm. See Amazon.com, 239 F.3d at 1350 (citations omitted).

    1.     Likelihood of Success on the Merits

To demonstrate a likelihood of success on the merits of its patent infringement claim, Plaintiffs must show that they will likely prove Defendants infringed on the '552 patent and that the

---

[4] Neither did Plaintiffs move into evidence a copy of the prosecution history of the '552 patent. In the parties' joint evidentiary statement, Plaintiffs listed the file wrapper (or prosecution history) of the '552 patent as a rebuttal exhibit and Defendants objected to the exhibit on the basis that Plaintiffs had not previously provided them with a copy of the file wrapper as Defendants had requested. Plaintiffs did not attempt to move the exhibit into evidence at the hearing. However, at this stage of the proceedings, it is not clear that this evidence would have significantly assisted Plaintiffs in establishing their right to preliminary injunctive relief on the patent infringement claim.

'552 patent is valid and enforceable. See Amazon.com, 239 F.3d at 1350 (citation omitted); Pfizer, Inc. v. Teva Pharm., USA, Inc., 429 F.3d 1364, 1372 (Fed. Cir. 2005) (citation omitted). "An infringement analysis, whether literal or under the doctrine of equivalents, requires two steps: (1) construction of the claims to determine the scope and meaning of the asserted claims; and (2) comparison of the properly construed claims with the allegedly infringing device." P.N.A. Const. Techs., 414 F. Supp. 2d at 1235 (citations and quotations omitted). While "[c]onclusive and final construction is not required at the preliminary injunction stage," id. (citing Sofamor Danek Group v. DePuy-Motech, Inc., 74 F.3d 1216, 1221 (Fed. Cir. 1996)), the two-step analysis is required at the preliminary injunction stage to assess the likelihood of infringement. See Oakley, Inc. v. Sunglass Hut Int'l, 316 F.3d 1331, 1339 (Fed. Cir. 2003) ("An assessment of the likelihood of infringement, like a determination of patent infringement at a later stage in litigation, requires a two-step analysis.").

Claim construction is an issue of law and preliminary construction must be included in an infringement analysis at the preliminary injunction stage.[5] See Amazon.com, 239 F.3d at 1351 (citation omitted) ("It is elementary in patent law that, in determining whether a patent is valid and, if valid, infringed, the first step is to determine the meaning and scope of each claim in suit."); Oakley, 316 F.3d at 1339 (citations omitted) ("First, the court determines the scope and meaning of the patent claims asserted . . . [Secondly,] the properly construed claims are compared to the allegedly infringing device. . . . Step one, claim construction, is an issue of law.").

In construing claims, the court should first look to "the claims themselves, the written

---

[5] While asserting that a claims construction is unnecessary at the preliminary injunction stage, Plaintiffs have failed to offer persuasive authority in support of this argument.

description portion of the specification, and the prosecution history." Bell & Howell, 132 F.3d at 705 (citation omitted). Here, however, Plaintiffs have neither presented a proposed claim construction for the asserted claims 1, 3, and 5 nor presented evidence as to the interpretation and scope of the asserted claims. Although Dr. Hansjurgens, the patentee, testified at length concerning the accused device's alleged infringement, he did not offer a claims construction. Moreover, "the testimony of an inventor and his attorney concerning claim construction is [] entitled to little or no consideration" because such evidence may be self-serving (in the case of the patentee) or no more than legal opinion (in the case of the patentee's attorney). See id. at 706.

Without a proposed claim construction by Plaintiffs and an opportunity for Defendants to rebut the same, the court cannot undertake a proper infringement analysis to determine a likelihood of success on the merits.[6] Therefore, Plaintiffs have failed to establish a likelihood of success on the merits of the patent infringement claim at this stage of the proceedings.

2.   Irreparable Harm

If a plaintiff makes a clear showing of patent validity and infringement, irreparable harm is presumed. Amazon.com, 239 F.3d at 1350 (citations omitted). Because Plaintiffs have not made a strong showing here, they are not entitled to the benefit of this presumption.

In patent cases, the availability of money damages can rebut irreparable harm. P.N.A. Const.

---

[6] Moreover, both the affidavit and testimony of Defendants' expert, Dr. Feinberg, support Defendants' claim of patent non-infringement, at least for purposes of defeating Plaintiffs' claim of substantial likelihood of success on the merits. Dr. Feinberg testified that Axiom's machine can operate on either 24 pre-set programs or custom settings, as determined by the user of the machine. In his detailed report, Defendants' expert concluded that his analysis of Axiom's product revealed that "there are no output waveforms that meet each and every element of claim 1." (Dkt. 34, Ex. C) Even if Dr. Feinberg did not test the custom settings for Axiom's product as Plaintiffs contend, Defendants' evidence at this stage is sufficient to counter that of Plaintiffs on the patent infringement issue.

Techs., 414 F. Supp. 2d at 1242 (citation omitted). "The availability of damages is particularly significant when . . . the patentee can point to no specific interest that needs protection through interim equitable relief." Id. (citation omitted). When a patent is valid and infringed, however, "the nature of the patent grant weighs against holding that money damages will always suffice to make a patentee whole." Id. at 1242-43 (citation omitted). As previously discussed, Plaintiffs have not demonstrated a reasonable likelihood of success on their claim that the '552 patent is valid and infringed. Further, Plaintiffs have neither pointed to a "specific interest" that needs protection nor presented evidence that money damages would not be sufficient in this case. Therefore, the court finds that Plaintiffs have failed to establish that they would suffer irreparable harm if the injunction were denied on the patent infringement claim.

Because Plaintiffs have failed to establish either the likelihood of success on the merits or irreparable harm, the court declines to make findings on the patent infringement claim with respect to the remaining two factors. See Reebok Int'l Ltd. v. J. Baker, Inc., 32 F.3d 1552, 1556 (Fed. Cir. 1994) (declining to require a district court to articulate findings on the third and fourth factors when the court denies a preliminary injunction based on the failure to establish either of the two critical factors).

Absent a showing of likelihood of success on the merits or irreparable harm, the court recommends that Plaintiffs' motion for preliminary injunction be denied as to the patent infringement claim.

B.      Trademark Infringement

Plaintiffs argue that Axiom is infringing on Plaintiffs' registered mark VASOPULSE® by advertising its product the NVP8500TM as the "Neuro Vaso Pulse System" (Dkt. 7, at 12). Plaintiffs

10

contend that Defendants' misuse of the mark will "undoubtedly cause a likelihood of confusion by eliciting consumer confusion as to the source and/or sponsorship of the goods bearing the Plaintiff's mark." (Id. at 13). Defendants do not dispute that they are using the VASOPULSE® mark in conjunction with their product; instead, Defendants argue that the VASOPULSE® mark is deceptively misdescriptive because the term "vasopulse" literally describes a process of applying a rhythmical beating, vibrating, or sounding to a blood vessel, and Plaintiffs' machine is not used to treat blood vessels[7] (Dkt. 33, at 15). Defendants do not deny that Axiom markets its product as the "Neuro Vaso Pulse System".

### 1. Likelihood of Success on the Merits

In order to succeed on a trademark infringement claim, Plaintiffs must show that Defendants "used the mark in commerce without [their] consent and 'that the unauthorized use was likely to deceive, cause confusion, or result in mistake.'" Nitro Leisure Products, LLC v. Acushnet Co., 341 F.3d 1356, 1359 (Fed. Cir. 2003) (citation omitted). The Eleventh Circuit has enumerated seven factors that the court should consider in determining whether there is a likelihood of confusion: 1) the type of mark at issue; 2) the similarity of the mark; 3) the similarity of products or services the mark represents; 4) the identity of purchasers and similarity of retail outlets; 5) the similarity of advertising media; 6) the defendant's intent; and 7) actual confusion. Glen Raven Mills, 852 F. Supp. at 1548 (citation omitted). The most important factors are the type of mark and evidence of actual confusion. Dieter v. B & H Indus. of S.W. Fla., Inc., 880 F.2d 322, 326 (11th Cir. 1989), cert.

---

[7] Defendants submit that they have filed a petition to cancel the '719 registration with the Trademark Trial and Appeal Board on the basis that the mark is deceptively misdescriptive, and argue that a likelihood of confusion analysis is unnecessary because the registration will likely be held invalid. However, the pending petition to cancel the registration has no bearing on the court's analysis of the trademark infringement claim.

denied, 498 U.S. 950 (1990).

Because Plaintiffs must show a likelihood of success on the merits to obtain a preliminary injunction on its trademark infringement claim, Plaintiffs must show a likelihood of success on its claim that Axiom's sale and marketing of its EPS8000/NVP8500 as the "Neuro Vaso Pulse System" is likely to cause confusion. Plaintiffs need not prove "that consumers would likely confuse the alleged infringer's product with the real product . . .; it is sufficient to show that the unauthorized use of the trademark has the effect of misleading the public to believe that the user is sponsored or approved by [Plaintiffs]." Phat Cat Carts, 2006 WL 2982869, at *4 (citation omitted).

> a.   Type of Mark

To determine the level of protection to be extended to a trademark, the court must analyze whether the mark is strong or weak. Glen Raven Mills, 852 F. Supp. at 1548. The greatest protection is afforded to strong and distinctive servicemarks; "the strength of the mark depends on the extent of third party usage and the relationship between the name and the service or good it describes." Id. (citation omitted). The more a mark is used by third parties, the less a likelihood of confusion exists. Id. (citation omitted).

The court must first consider the proper categorization of the mark. "Generic marks refer to a particular genus or class of which an individual service [or product] is but a member; such marks may never receive . . . protection. Descriptive marks directly describe a characteristic or quality of the service [or product], and can only be protected if they have acquired "secondary meaning". . . . Suggestive marks subtly connote something about the service [or product] so that a consumer could use his or her imagination and determine the nature of the service [or product]. . . .An arbitrary or fanciful mark is a word in common usage applied to a service [or product] unrelated to its meaning."

AmBrit, Inc. v. Kraft, Inc., 812 F.2d 1531, 1537 n.20 (11th Cir. 1986), cert. denied, 481 U.S. 1041 (1987) (citations omitted). Suggestive and arbitrary marks are entitled to the strongest protection because they are considered to be the most distinctive; however, some protection may still be afforded to descriptive marks. Glen Raven Mills, 852 F. Supp. at 1548.

"The strength of a mark depends on the logical correlation between a name and a product." Carnival Brand Seafood Co. v. Carnival Brands, Inc., 187 F.3d 1307, 1312 (11th Cir. 1999). A weakly protected mark is one where "the seller of a product or service would naturally use a particular name." Id. Here, there is no indication that a seller of an electrotherapy machine similar to the one in the instant case would naturally use the name "vasopulse" in marketing and selling its product. Similarly, Defendants' argument that the term "vasopulse" does not describe what the machine actually does supports a finding that the mark is more suggestive or arbitrary than general or descriptive. Finally, there is no evidence that the term "vasopulse" is regularly used by third parties, thereby contributing to its distinctiveness and enhancing its strength. See Frehling Enter., Inc. v. Int'l Select Group, Inc., 192 F.3d 1330, 1336-37 (11th Cir. 1999), cert. denied, 530 U.S. 1214 (2000) (citation omitted) (a lack of third-party use strengthens distinctiveness of mark). On this evidence, the court finds that Plaintiffs' mark is entitled to at least moderate protection.

        b.     Similarity of the Mark

A high degree of similarity between the marks increases the likelihood of confusion. Glen Raven Mills, 852 F. Supp. at 1549. The court's analysis should compare the "appearance, sound, and meaning of the marks, as well as the manner in which they are displayed." Id. (citation omitted). Rather than comparing the marks' individual features, the court should consider the overall impression created by the marks. Id.

13

Defendants do not dispute Plaintiffs' contention that Defendants market their machine as the "Neuro Vaso Pulse System" or dispute that they use the "vasopulse" term in marketing and selling their machines. The court finds that the overall impression the marks create is that they are strikingly similar in sight, sound, and meaning. The manner in which they are used is similar in that they are both used to describe an electrotherapy machine. Even though Hako-Med USA describes its product as the "VasoPulse2000" and Axiom describes its product as the "Neuro Vaso Pulse System", the use of these extra words does not dilute the term "vasopulse." See Frehling Enter., 192 F.3d at 1337 (citation omitted) ("a mark may be surrounded by additional words of lesser importance and not have its strength diluted"). In both descriptions, the "vasopulse" term is the dominant portion of the mark. Given the striking similarity between the two, it is "highly probable that a reasonable consumer could likely be confused as to the source of the product[] that each mark represents." Id. Thus, this factor weighs in favor of Plaintiffs.

c.      Similarity of Products or Services

"The greater the similarity between products and services, the greater the likelihood of confusion." Glen Raven Mills, 852 F. Supp. at 1549 (citation omitted). The parties agree that their machines directly compete with each other for the same market share. Both products are electrotherapy machines which are sold to doctors and chiropractors for use in treating patients. Both products operate similarly. It is not unreasonable that a consumer could attribute both products to one source given the design and operation of these products. Therefore, the court finds that this factor weighs in favor of Plaintiffs.

d.      Identity of Purchasers and Similarity of Retail Outlets

"Likelihood of confusion is more probable if the products are sold through the same channels

14

to the same purchasers." <u>AmBrit</u>, 812 F.2d at 1541. "This factor takes into consideration where, how, and to whom the parties' products are sold." <u>Frehling Enter.</u>, 192 F.3d at 1339. As previously discussed, the parties agree that their machines directly compete with each other for the same market share and are sold primarily to doctors and chiropractors. Defendant presented evidence at the hearing that some of its current clients used to be Plaintiffs' customers. Direct competition is strong evidence that weighs in favor of a likelihood of confusion. <u>Id.</u> Therefore, the court finds that this factor weighs heavily in favor of Plaintiffs.

e.     <u>Similarity of Advertising Campaigns</u>

"If a plaintiff and defendant both use the same advertising media, a finding of likelihood of confusion is more probable." <u>AmBrit</u>, 812 F.2d at 1542. Here, there is evidence that both parties advertise through their respective websites. There is not much evidence before the court as to the print media in which the respective parties advertise. "Identity of periodicals is not required; the standard is whether there is likely to be significant enough overlap in the readership of the publications in which the parties advertise that a possibility of confusion could result." <u>Frehling Enter.</u>, 192 F.3d at 1340 (citation omitted). Here, because the target market for the parties' electrotherapy machines is such a niche market and because the parties agree that their sales target the same market share, it is likely that a significant overlap of consumers exists and that the same consumers would be exposed to both parties' advertisements and marketing efforts. Consequently, the advertising factor favors Plaintiffs.[8]

f.     <u>Defendants' Intent</u>

---

[8] Defendants' website prominently refers to its product as "Axiom's Vaso Pulse System (NVP8500TM)". (Pls.' Ex. 11)

15

"Likelihood of confusion may be established by evidence that a defendant intended to benefit from the reputation of a plaintiff's service or product by inducing confusion." Glen Raven Mills, 852 F. Supp. at 1551 (citation omitted). The '719 mark was issued in October 3, 2000. Kai Hansjurgens testified that he met with Exarhos at Axiom's headquarters in September 2001. According to Kai Hansjurgens, Exharhos proposed a joint venture at this meeting where Hako-Med USA would manufacture a device for Axiom. This joint venture did not come to fruition.

Gary Dixon, Vice President of Marketing and Sales for Axiom, testified that Axiom began marketing its EPS8000/NVP8500 product on July 28, 2005. Given the length of time that the VASOPULSE® trademark has been in the market and based on the evidence presented at the hearing, Plaintiffs have established that Defendants were aware of the VASOPULSE® trademark before Defendants began using the mark. With this evidence before the court, Defendants' intent does support a likelihood of confusion.

g.     Actual Confusion

Actual confusion is the best evidence of likelihood of confusion, although the absence of actual confusion does not preclude a finding of likelihood of confusion. John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 978 (11th Cir. 1983) (citation omitted). "Actual confusion by a few customers is evidence of a likelihood of confusion by many customers." Glen Raven Mills, 852 F. Supp. at 1552 (citation omitted). Plaintiffs have not presented any evidence of actual confusion among the direct purchasers or end users of its machine. Although Plaintiffs rely on the affidavit of Donald H. Bailey, M.D. ("Dr. Bailey") and the affidavit of Hako-Med's salesman Joe Bumley to support its allegation of actual confusion, the court finds that these affidavits do not demonstrate actual confusion by purchasers of the product. Therefore, the court finds that this factor weighs in

favor of Defendants.

In the overall balancing of the seven above factors, the court finds that Plaintiffs have demonstrated a likelihood of success on their trademark infringement claim.

### 2.     Irreparable Harm

The Eleventh Circuit has held that "a sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of . . . irreparable harm." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1310 (11th Cir. 1998) (citations omitted). As previously discussed, Plaintiffs have made a strong showing of likelihood of confusion; Defendants have used a nearly identical mark as Plaintiffs' registered mark in marketing and selling an electrotherapy system that is nearly identical to the product sold by Plaintiffs. Therefore, irreparable harm to Plaintiffs is presumed.

### 3.     Balance of Hardships

Defendants have not made any showing that they are entitled to use the VASOPULSE® mark. At the hearing, Defendants argued that an injunction preventing them from using the "vasopulse" term would financially burden Axiom because it would have to change all of its marketing and advertising materials to comply with the injunction. However, if the injunction is not granted, Plaintiffs will continue to lose goodwill with its customers to the extent to which Plaintiffs' customers identify the "vasopulse" term with Plaintiffs' product. Therefore, the court finds that the harm that will inure to  Defendants if the court grants the injunction would not outweigh the irreparable harm to Plaintiffs if the injunction were not granted. See Burger King Corp. v. Majeed, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (citation omitted) ("[O]ne who adopts the marks of another for similar goods acts at his own peril, since he has no claim to the profits or advantages thereby

derived.")

### 4.   Public Interest

Finally, the court must examine whether "granting [a] preliminary injunction will disserve the public interest." E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc., 756 F.2d 1525, 1530 n.13 (11th Cir. 1985). Here, the court finds that a preliminary injunction would not disserve the public interest; conversely, a preliminary injunction would affirmatively serve the public interest by protecting the trademark owner who has "spent time, energy, and money in presenting a product to the public and building a reputation for that product" and preventing consumer confusion in the marketplace. Davidoff & CIE, S.A. v. PLD Int'l Corp., 263 F.3d 1297, 1301, 1304 (11th Cir. 2001) (citations omitted).

Accordingly, all four of the factors that the court has considered weigh in favor of the issuance of a preliminary injunction on the trademark infringement claim.

### C.   Trade Dress Infringement

"The term 'trade dress' refers to the total image of a product, and may include features such as size, shape, color combinations, texture, graphics, or even particular sales techniques." Callaway Golf Co. v. Golf Clean, Inc., 915 F. Supp. 1206, 1212 (M.D. Fla. 1995) (citing Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 764 n.1, reh'g denied, 505 U.S. 1244 (1992)). Plaintiffs first allege that Axiom has committed trade dress infringement because its advertisements utilize the VASOPULSE mark and copy the overall appearance of Hako-Med USA's advertisements and product marketing strategies. Plaintiffs further contend that "Axiom's use of similar packaging of the machines, use of identical accessories used in operation of the machines, use of identical colors of the packaging and corresponding supplies, and the use of the exact same suppliers as Plaintiffs

18

in obtaining the accessories and necessary information for operation of the machines . . . clearly constitutes trade dress infringement." (Dkt. 7, at 14). Plaintiffs submit that Defendants' EPS8000/NVP8500 product, along with the accessories used with that product, are identical to Plaintiffs' product and are advertised and marketed as such.

Defendants argue that Plaintiffs' trade dress infringement claim fails because Plaintiffs have failed to identify the specific elements of its alleged trade dress either in the amended complaint or at the evidentiary hearing. Defendants contend that because Plaintiffs have not provided any comparison of Axiom's and Hako-Med USA's trade dress, it is impossible to determine what the alleged trade dress is or whether it is confusingly similar. Based on the testimony at the hearing, the trade dress at issue here appears to be the total image of the product, including the packaging and design. Kai Hansjurgens testified that the two machines look the same if viewed side by side. He also testified that the wiring of proprietary connectors is identical, that the accessories are interchangeable, that the controls are almost identical, and that the buttons and symbols on Axiom's machine and box are ones that Dr. Hansjurgens designed in the 1980s specifically for Hako-Med's product.

### 1.    Likelihood of Success on the Merits

A plaintiff must prove three elements to succeed on a claim for trade dress infringement: "1) that the product design of the two products is confusingly similar; 2) that the features of the product design are primarily nonfunctional; and, 3) that the product design is inherently distinctive or has acquired secondary meaning." Phat Cat Carts, 2006 WL 2982869, at *5 (citing Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC, 369 F.3d 1197, 1202 (11th Cir. 2004)). Under section 43(a) of the Lanham Act, 15 U.S.C. § 1125, "the design of a product itself may constitute protectable trade

dress." Id. at *5 (citing John H. Harland Co., 711 F.2d at 980). "The term 'trade dress' refers to the appearance of a product when that appearance is used to identify the producer." Dippin' Dots, 369 F.3d at 1202 (citation omitted).

Regarding the first element, "the factors relevant to determining whether there is a likelihood of confusion between the trade dress of two products are 'essentially the same' as those relevant to determining whether there is a likelihood of confusion between the parties' trademarks." John H. Harland Co., 711 F.2d at 981 (citations omitted). The Eleventh Circuit has held that the first element of a trade dress infringement claim is established where a plaintiff first establishes a likelihood of confusion for a trademark infringement claim.[9] Id. As previously discussed, the court finds that Plaintiffs established a likelihood of confusion on the trademark infringement claim; therefore, the court finds that Plaintiffs have also established a likelihood of confusion on the trade dress infringement claim.

The second element Plaintiffs must prove to succeed on a trade dress infringement action is to prove that the product design features are primarily non-functional. Dippin' Dots, 369 F.3d at 1202. "A product feature is considered functional if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." Phat Cat Carts, 2006 WL 2982869 at *6 (citation omitted). However, "individual elements of the trade dress can still be functional and the entire

---

[9] A plaintiff who establishes a likelihood of confusion for a trademark infringement claim also establishes the first element of a trade dress infringement claim because the court considers essentially the same factors as when determining likelihood of confusion on a trademark infringement claim: 1) strength of the trade dress, 2) similarity of design, 3) similarity of the products, 4) similarity of retail outlets and purchasers, 5) similarity of advertising media, 6) the defendant's intent, and 7) actual confusion. See Phat Cat Carts, 2006 WL 2982869, at *5 (citation omitted). See also Callaway Golf, 915 F. Supp. at 1213-15 (evaluating the seven factors in a trade dress infringement claim).

package still be protected." <u>Callaway Golf</u>, 915 F. Supp at 1213 (citations omitted). If an exclusive right to use the trade dress as a whole would hinder effective competition by others, the trade dress is primarily non-functional. <u>Id.</u> "Factors to consider are whether a particular design is superior, whether there are alternative trade dress configurations available, and whether a particular design is comparatively simple or cheap." <u>Id.</u> (citation omitted).

Plaintiffs have not offered any evidence that their product features are primarily nonfunctional. First, Plaintiffs have not shown that the overall appearance of their electrotherapy machine distinguishes it from competitors' machines. Similarly, Plaintiffs have not shown that "alternative trade dress configurations that serve the same function are available to competitors." <u>Callaway Golf</u>, 915 F. Supp. at 1213. Even though Kai Hansjurgens testified that Hako-Med's and Axiom's machines look exactly alike, that the accessories are interchangeable, and that several of the buttons are identical, Plaintiffs have not demonstrated that their machine's trade dress does not serve a necessary function. Finally, there is no evidence before the court that effective competition by others will not be hindered by Plaintiffs' exclusive use of the trade dress at issue.

The final element that Plaintiffs must prove is that either its trade dress is inherently distinctive or that it has acquired secondary meaning. <u>Two Pesos</u>, 505 U.S. at 769.

> Manifestly, if [a] plaintiff's trade dress is not sufficiently distinctive to allow consumers to identify the product from the trade dress, then the dress does not inherently serve as an indication of origin and the plaintiff can claim no right to the exclusive use of that trade dress. Even if a competitor appropriated the identical trade dress, the plaintiff would not be injured because the plaintiff's trade dress does not serve to distinguish its goods from those of its competitor's. Alternatively, a finding of secondary meaning suffices to establish protectability because such a finding means that notwithstanding the indistinctiveness of the trade dress, the consuming public has come to associate that trade dress with the product's producer.

<u>AmBrit</u>, 812 F.2d at 1536. "Secondary meaning is the connection in the consumer's mind between

the mark and the product's producer, whether that producer is known or unknown." Id. at 1536 n.14. "If a product is inherently distinctive, secondary meaning need not be demonstrated." Callaway Golf, 915 F. Supp. at 1212 (citation omitted).

The Eleventh Circuit instructs that in examining whether trade dress is inherently distinctive the court should consider factors such as "whether it is a 'common' basic shape or design, whether it is unique or unusual in a particular field, and whether it is a mere refinement of a commonly adopted and well-known form of ornamentation for a particular class of goods viewed by the public as a dress or ornamentation for the goods." AmBrit, 812 F.2d at 1536 (citations omitted). Like trademarks, trade dress may be classified as generic, descriptive, suggestive, or arbitrary. Id. at 1537. When viewed on a "spectrum", "the distinctiveness of a product's trade dress increases as it moves toward the suggestive or arbitrary end of the spectrum." Id.

Plaintiffs have not sufficiently articulated what they consider to be their product's trade dress. There is no evidence before the court that Plaintiffs' product creates a "distinct visual impression" in the minds of consumers. See id. at 1536 (discussing the district court's finding that a wrapper created a distinctive visual impression where the size, coloring, pebbled texture, and images were a complex composite of size, color, texture, and graphics). Plaintiffs have presented no evidence as to why they adopted such trade dress for their product or why it is distinctive. Similarly, Plaintiffs have presented no evidence that competitors have not previously used a combination of Plaintiffs' trade dress to create a similar impression. See Robarb, Inc. v. Pool Builders Supply of the Carolinas, Inc., 696 F. Supp. 621, 624-25 (N.D. Ga. 1988) (discussing that prior use by third parties of a plaintiff's trade dress may detract from the distinctiveness of the dress and consumers' ability to identify it with the source of the product). It is Plaintiffs' burden to show

that its use of certain buttons or "common lettering styles, geometric shapes, or colors," for example, create a total impression that makes their machine distinctive to an observer.  See Callaway Golf, 915 F. Supp. at 1212.

The only evidence of Plaintiffs' use of a specific trade dress was Dr. Hansjurgens' and Kai Hansjurgens' testimony that the symbol on the buttons of Plaintiffs' machine, which Dr. Hansjurgens designed in the 1980s specifically for his product, was used by Axiom on its machine and on the packaging of the product. This testimony alone is not enough to establish that Plaintiffs' trade dress is distinctive. Moreover, Plaintiffs have presented no evidence that the overall appearance of their machine's trade dress is arbitrary or suggestive, as opposed to generic or descriptive. Therefore, there is not enough evidence before the court to find that Plaintiffs' trade dress is inherently distinctive.

Because Plaintiffs have not shown that their machine's trade dress is inherently distinctive, the court will proceed to the analysis of whether the trade dress has acquired secondary meaning. "A court should consider the following factors in assessing secondary meaning: (1) the length of time and manner of its use; (2) the nature and extent of its use; and (3) the efforts made in the direction of promoting a conscious connection, in the public's mind, between the mark and a particular source of origin." Id. at 1213 (citations omitted).

Again, Plaintiffs have presented no evidence to support that their machine's trade dress has acquired secondary meaning. There is no evidence of the efforts directed to advertising or promotional materials that would purport to connect the consumer's mind with a unique and distinctive appearance. Similarly, Plaintiffs have presented no articles or publications targeted at their market share that prominently featured or depicted the machine and a distinctive trade dress.

Moreover, there is no evidence of Plaintiffs' sales figures from the sale of its machine, which could help establish the popularity of the machine in Plaintiffs' market share. See id. (Callaway's "bombarding" of the golfing consumer with advertising and promotional materials prominently featuring the unique and distinctive appearance of its gold club, as well as the company's sales figures, helped establish that its club had acquired secondary meaning). As such, the court cannot find that Plaintiffs' trade dress has acquired secondary meaning based on the evidence presented.

Plaintiffs have not presented enough evidence as to their trade dress for the court to find a substantial likelihood of success on the merits of the trade dress infringement claim.

2.    Irreparable Harm

Plaintiffs have not shown substantial likelihood of success on the merits; therefore, the court cannot presume irreparable harm to Plaintiffs if Defendants are enjoined from using Plaintiffs' trade dress. Foremost, Plaintiffs have not presented evidence that they will suffer irreparable injury if an injunction is not issued as to the trade dress infringement claim. Moreover, Plaintiffs have not alleged a specific interest that cannot be adequately protected through the availability of monetary damages. Therefore, the court must find that irreparable harm to Plaintiffs is not established as to the trade dress infringement claim.

Because Plaintiffs have failed to establish either the likelihood of success on the merits or irreparable harm for the trade dress infringement claim, the court declines to make findings with respect to the remaining two factors for the issuance of a preliminary injunction. Accordingly, the court must recommend that the motion for preliminary injunction be denied with respect to the trade dress infringement claim.

**V.     Security Requirement**

Federal Rule of Civil Procedure 65(c) states that "no restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). In the event that the court grants the injunctive relief as to the trademark infringement claim as recommended, the court will have to determine the appropriate amount of bond. In its motion and at the hearing, Plaintiffs suggested that a bond in the amount of $25,000.00 was appropriate; Defendants did not suggest a bond amount. However, Plaintiffs' recommendation was based on their position that they were entitled to injunctive relief as to all claims. Additional briefing may be necessary as to the appropriate amount of bond for the trademark infringement claim only; therefore, the undersigned does not recommend a bond amount at this time.

## VI.      Conclusion

Upon consideration, it is **RECOMMENDED** that Plaintiffs' motion for preliminary injunction (Dkt. 2) be **GRANTED IN PART** and **DENIED IN PART** as follows:

(1)      Plaintiffs' motion should be **GRANTED** and a preliminary injunction **ISSUED** as to Defendants' use of the registered trademark VASOPULSE®, prohibiting Defendants from using the VASOPULSE® name, trademark, or logo in any manner on any of its products,  marketing materials, advertising materials, manuals, or any other written materials describing their electrical nerve stimulation device.

(2)      All other relief requested should be **DENIED**.

**DONE AND ORDERED** in Tampa, Florida this 15th day of November, 2006.

ELIZABETH A JENKINS
United States Magistrate Judge

**<u>NOTICE TO PARTIES</u>**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. <u>See</u> 28 U.S.C. § 636(b)(1).

Copies to:
District Judge
Counsel of Record