## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**HAKO-MED USA, INC., et al.,**

     **Plaintiffs,**

**vs.**                                          **Case No.: 8:06-CV-1790-T-27EAJ**

**AXIOM WORLDWIDE, INC., et al.,**

     **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Before the court are **Axiom's Motion for Summary Judgment of Non-Infringement and Invalidity of the Patent in Suit** (Dkt. 71) and **Plaintiff's Response** (Dkt. 72).[1] Following a status conference on May 13, 2008, the parties submitted a **Joint Statement for Summary Judgment Purposes** (Dkt. 78). For the reasons set forth below, the undersigned recommends that Axiom's Motion for Summary Judgment be denied in part and deferred in part on the issue of non-infringement as to the disputed claim terms pending a <u>Markman</u> hearing.[2]

## I.    Background

Achim Hansjurgens ("Hansjurgens"), a resident of Germany, holds United States Patent No. 5,573,552 ("the '552 patent", attached as Ex. 1 to Plaintiffs' amended complaint), which was issued by the United States Patent Office on November 12, 1996. The patent is for an electrotherapeutic apparatus which "operates in the medium frequency range between 1000 Hz and 100,000 Hz, with paired, diametrically opposed electrodes applied in relation to a body part to be treated." (Amended

---

[1] The district judge referred this matter to the undersigned for consideration and a report and recommendation (Dkt. 73). <u>See</u> 28 U.S.C. § 636(c); Local Rules 6.01(b) and 6.01(c), M.D. Fla.

[2] <u>See</u> <u>Markman v. Westview Instruments, Inc.</u>, 517 U.S. 370 (1996).

Compl., Ex. 1).

Plaintiffs refer to the device's technology as internationally patented "Horizontal Therapy" employed in a machine called the ProElecDT2000/VasoPulse2000. Plaintiffs claim that Defendants manufacture and sell a device, the EPS8000, that infringes on claims 1, 3, and 5 of the '552 patent. Plaintiffs concede that claims 3 and 5 are dependent on claim 1; if Defendants' device does not infringe on claim 1, the device cannot infringe on claims 3 and 5.

Claim 1 of the patent reads:

1. An apparatus for electrotherapeutic applications operating in a medium-frequency range between 1000 Hz and 100,000 Hz comprising;

a circuit capable of generating a medium-frequency current of *constant amplitude*;

a modulator operatively coupled to said circuit and capable of *frequency modulating* the medium frequency output of said circuit;

two electrodes operatively coupled to said circuit to receive the modulated output of said circuit, the modulated output having a modulation interval of one thousand to several thousand Hz (corner frequencies) with a *modulation frequency* of >0 to several hundred Hz (for instance 200 Hz) *in order to generate in synchronism with the modulation frequency action potentials in the treatment area.*

(Amend. Compl., Ex. 1) (emphasis added).

Defendants contend that summary judgment is proper because Plaintiffs have no evidence that Axiom's device meets the last limitation of claim 1: that Axiom's device performs "the function of generating action potentials 'in synchronism with the modulation frequency' in the treatment area." (Dkt. 71 at 12).  Defendants contend that this limitation also renders claim 1 invalid based on non-enablement and indefiniteness. Further, Defendants argue that other claim limitations are not present in Axiom's device and that Plaintiffs have offered no evidence that Axiom's device infringes under the doctrine of equivalents.  Plaintiffs respond that the record contains ample evidence to

create genuine issue of material fact as to infringement and that, notwithstanding, the patent cannot be invalidated solely on the declaration of Defendants' expert without a <u>Markman</u> hearing. Neither party has formally requested a <u>Markman</u> hearing.[3]

## II.    Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no issue of material fact exists. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). Once the movant has met this burden, the nonmoving party must identify specific facts that raise a genuine issue for trial. <u>Id.</u>; Fed. R. Civ. P. 56(e).

"As in other cases, the grant of summary judgment under Fed. R. Civ. P. 56 is appropriate in a patent case where no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." <u>Becton v. Dickinson & Co. v. C.R. Bard, Inc.</u>, 922 F.2d 792, 795 (Fed. Cir. 1990) (citations omitted). "A factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is 'material' if it might affect the outcome of the suit under the governing substantive law." <u>Beck v. Somerset Techs., Inc.</u>, 882 F.2d 993, 996 (5th Cir. 1989) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>accord</u> <u>Tipton v. Bergrohr GMBH-Siegen</u>, 965 F.2d 994, 998 (11th Cir. 1992)).

---

[3] At the May 13, 2008 status conference, the court discussed with the parties the necessity of a <u>Markman</u> hearing and directed them to submit a joint statement of disputed claim terms, their proposed constructions, and record evidence in support of their position.  Defendants contended that the court could resolve their summary judgment motion on the last limitation of claim 1 without a <u>Markman</u> hearing, but that a hearing might be necessary if the court found summary judgment improper on the last limitation of claim 1.  Plaintiff argued that a <u>Markman</u> hearing is needed only before the case is submitted to a jury (if summary judgment is denied).

At the summary judgment stage, the court must judge all evidence in the light most favorable to the nonmoving party and must draw all justifiable inferences in the nonmoving party's favor. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990) (citations omitted). However, the evidence must also be viewed in light of the evidentiary burden of the respective parties under the substantive law of the case. Anderson, 477 U.S. at 248. The nonmoving party "must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997). "The evidence presented cannot consist of conclusory allegations or legal conclusions." Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991); see also Fed. R. Civ. P. 56(e).

## III.    Analysis

"To establish infringement of a patent, every limitation set forth in a claim must be found in an accused product or process exactly or by a substantial equivalent." Becton Dickinson & Co., 922 F.2d at 796 (citation omitted). "An infringement analysis, whether literal or under the doctrine of equivalents, requires two steps: (1) construction of the claims to determine the scope and meaning of the asserted claims; and (2) comparison of the properly construed claims with the allegedly infringing device." P.N.A. Const. Techs., Inc. v. McTech Group, Inc., 414 F. Supp. 2d 1228, 1235 (N.D. Ga. 2006); see also CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1365 (Fed. Cir. 2002). Literal infringement requires that the accused device contain each and every limitation of the a claim. Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc., 389 F.3d 1370, 1378 (Fed. Cir. 2004). "The doctrine of equivalents, meanwhile, prevents competitors from pirating the essence of an invention while narrowly avoiding the literal language of the claims." H2Ocean, Inc. v. Schmitt, No. 3:05cv387/RV/EMT, 2007 WL 2376233, *3 (N.D. Fla. Aug. 15, 2007) (internal

4

quotation marks and citation omitted).  A patent infringes by equivalents if each limitation of the claim is equivalently present in the accused device.  <u>Zodiac Pool Care, Inc. v. Hoffinger Indus., Inc.,</u> 206 F.3d 1408, 1415 (Fed. Cir. 2000) (citations omitted). "Equivalently present" means "there must be only 'insubstantial differences' between the missing claim limitation and corresponding aspects of the accused device." <u>Id.</u> The doctrine of equivalents "is intended to prevent a competitor from making merely insubstantial changes to the patented product and passing if off as a new product." <u>H2Ocean</u>, 2007 WL 2376233 at *3.

Construing claims, including a claim's terms of art, is within exclusively the court's province. <u>Markman</u>, 517 U.S. at 376.[4]  No formal claim construction hearing is required at the summary judgment stage if the issues on which the summary judgment motion turns can be otherwise resolved. <u>See</u> <u>H2Ocean</u>, 2007 WL 2376233 at *3 n.3.  The Federal Circuit holds:

> <u>Markman</u> does not require a district court to follow any particular procedure in conducting claim construction.  It merely holds that claim construction is the province of the court, not a jury. . . .  If the district court considers one issue to be dispositive, the court may cut to the heart of the matter and need not exhaustively discuss all the other issues presented by the parties.  District courts have wide latitude in how they conduct the proceedings before them, and there is nothing unique about claim construction that requires the court to proceed according to any particular protocol. As long as the trial court construes the claims to the extent necessary to determine whether the accused device infringes, the court may approach the task in any way that it deems best.

<u>Ballard Med. Products v. Allegiance Healthcare Corp.</u>, 268 F.3d 1352, 1358 (Fed. Cir. 2001).

_____

[4] "Claim construction begins with an examination of the 'intrinsic evidence': the claims themselves; the patent specification, which includes the remainder of the written and graphic description of the invention in the patent; and the patent prosecution history, which includes the patent application and correspondence between a patentee and the Patent and Trademark Office examiners reviewing the application." <u>Guardian Pool Fence Systems, Inc. v. Baby Guard, Inc.</u>, 228 F. Supp. 2d 1347, 1353 (S.D. Fla. 2002) (citation omitted).  Extrinsic evidence, such as expert testimony or treatises, may also be considered in determining the scope and meaning of a claim term. <u>Id.</u>

Although an infringement analysis typically begins with claim construction, "the sequence of this process is not absolute, and, in an effort to avoid advisory opinions, only terms that are disputed, thereby placing such terms actually in controversy in the infringement litigation, are construed." Mextel, Inc. v. Air-Shields, Inc., No. Civ. A. 01-CV-7308, 2005 WL 226112, *45 (E.D. Pa. Jan. 31, 2005) (citations omitted). "Furthermore, the lack of an express claim construction by the Court does not absolve plaintiffs of their burden at the summary judgment stage to provide factual support for the conclusion that each and every limitation in the germane claims of the . . . patent[] reads on the accused device[]." Id.

In their "Joint Statement for Summary Judgment Purposes" the parties propose different constructions for only two terms in claim 1: "constant amplitude" and "modulation frequency" (Dkt. 78 at 2). The parties agree that the rest of the terms in each limitation of claim 1 should be construed to have their ordinary meaning. However, neither party offers a proposed definition of the ordinary meaning for any of these terms. Further, the parties agree that the terms "in order to generate in synchronism with the modulation frequency action potentials in the treatment area" should be given their ordinary meaning. Again, neither party offers an ordinary meaning for these terms.

No formal claims construction of the '552 patent has been undertaken by the court, offered by the parties, or formally requested by the parties. Notwithstanding, some of the issues raised in the summary judgment motion can be resolved without a formal claims construction. However, as discussed below, the undersigned concludes that a Markman hearing is necessary before the motion can be resolved entirely as to non-infringement.

a.      **Literal Infringement**

Defendants state that summary judgment should be granted as to non-infringement because

Plaintiffs can offer no evidence that Axiom's device meets the last limitation in claim 1: "in order to generate in synchronism with the modulation frequency action potentials in the treatment area." In response, Plaintiffs point to the declaration of their expert, Stephen C. Thomas, Esq. ("Thomas"), who sets forth a detailed element-by-element claim chart and opines that Axiom's device "literally embodies each element and limitation of claim 1." (Thomas Decl., Dkt. 72-3, at 14, 17).  Further, Hansjurgens, in discussing the "beat frequency" and the synchronous generation of action potentials in relation to the frequency range, states that the "four points" of Axiom's device are exactly the limitations of claim 1. (Hansjurgens Decl., Dkt. 72-4, at 5, 7-8).

Both Thomas' and Hansjurgens' declarations are sufficiently detailed to create a genuine issue of material fact about whether the device "generate[s] in synchronism with the modulation frequency action potentials in the treatment area."  These experts' opinions regarding infringement are not merely unsupported conclusions but offer specific limitation-by-limitation factual foundations for the opinions.  See Arthur A. Collins, Inc. v. Northern Telecom Ltd., 216 F.3d 1042, 1047 (Fed. Cir. 2000) (a party may not avoid summary judgment by offing a conclusory and factually unsupported expert opinion on infringement).  Thus, summary judgment of non-infringement based solely on this last limitation of claim 1 is improper and should be denied.

In the alternative, Defendants argue that three other limitations of claim 1 are also not present in Axiom's device because each of the device's pre-programmed and custom modes do not have either (1) a "constant amplitude" required by limitation A, (2) the "frequency modulating" required by limitation B, and/or (3) did not have the "continuous sinusoidal modulation frequency" required by limitation C (Dkt. 71 at 17).  In support, Defendants cite paragraphs 13-25 of their expert, Barry N. Feinberg's ("Feinberg") declaration, in which Feinberg describes how he tested Axiom's device

by measuring and recording the output waveforms of the device with a digital oscilloscope to capture and measure the waveform into a constant load resistance of 508 ohms, which according to Feinberg "stimulates the impedance of the human body." (Feinberg Decl., Dkt. 71-2, ¶ 13) Feinberg states that none of the programs he tested generated a current of "constant amplitude." (Id. at ¶ 14) Feinberg also opines that the "red electrode circuits for programs 5, 6, 7, and 21 are not frequency modulated." (Id. at ¶ 17) Finally, Feinberg declares that the '552 patent calls for sinusoidal modulation of the medium frequency output, but "[a]t no time is the output current waveform modulated by a sinusoidal periodic waveform as called for in the '552 patent." (Id. at ¶¶ 21, 23)

Plaintiffs' expert challenges Feinberg's qualifications and presents evidence to directly rebut Feinberg's opinions that the waveforms produced by Axiom's device are amplitude modulated (and thus not "constant") and that the patent requires a sinusoidally modulated waveform. (Thomas Decl., Dkt. 72-3, at 20-22) Thomas' declaration provides a fact-based analytical comparison between the accused and patented products and evidence demonstrating how each limitation in the relevant claims is found in Axiom's device.[5] (Id. at 14-18) Thomas specifically states, "Contrary to Mr. Feinberg's statement that the EPS 8000 cannot be programmed to produce a frequency modulated current waveform of constant amplitude, *as that term is properly construed in light of the relevant art*, it is possible to do so in the custom mode of operation. I have done so and observed the waveform on the Tektronix oscilloscope." (Thomas Decl., Dkt. 72-3, ¶ 32, emphasis added) Thomas also opines that Feinberg's statement that the patent requires a sinusoidal wave form is fundamentally wrong and that neither the patent claim language nor the specification requires

_____

[5] Thomas also notes that the stated use of Axiom's device in the Axiom device's owner's manual "is identical to that stated in the preamble of claim 1" of the patent. (Thomas Decl., Dkt. 72-3, at 15)

sinusoidal modulation. (Id. at ¶¶ 34-36)

Thus, the parties fundamentally disagree as to the proper construction of two terms in claim 1: "constant amplitude" and "modulation frequency." Central to the issue of infringement is whether the device comprises "a circuit capable of generating a medium-frequency current of *constant amplitude*" and "the modulated output [of said circuit] having a modulated interval of one thousand to several thousand Hz (corner frequencies) with a *modulation frequency* of >0 to several hundred Hz." (Amend. Compl., Ex. 1 at 2, claim 1) (emphasis added). Defendants and Plaintiffs offer different constructions for the terms "constant amplitude" and "modulation frequency." Defendants submit that "constant amplitude" may be construed to have its ordinary meaning, and that the term "modulation frequency should be construed to mean "continuous sinusoidal modulation frequency." (Dkt. 71 at 15; Dkt. 78) On the other hand, Plaintiffs propose that the term "constant amplitude" should be interpreted to have its ordinary meaning in the relevant medical art to mean an amplitude with up to a 20% variation. (Thomas Decl., Dkt. 72-3, at 10-12; Dkt. 78) Plaintiffs also propose that the term "modulation frequency" does not require sinusoidal modulation as Defendants claim. (Thomas Decl., Dkt. 72-3, at 21; Dkt. 78)

For the court to grant summary judgment as to the issue of infringement, there must be no disputed material facts as to whether Axiom's device generates a current of "constant amplitude" and whether the term "modulation frequency" requires sinusoidal modulation. Whether Axiom's device performs these functions is squarely disputed by the experts, each of whom answers the factual questions (and thus the ultimate legal conclusion about infringement) differently based on their respective interpretation of the terms. A claims construction hearing is necessary to interpret the disputed claim terms because of their complex and highly technical nature. See, e.g.,

Sightsound.com, Inc. v. N2K, Inc., 391 F. Supp. 2d 321, 328 n.3 (W.D. Pa. 2003) (citations omitted).  Accordingly, resolution of the infringement issue, whether literally or under the doctrine of equivalents, necessarily requires a Markman hearing to construe the disputed claim terms "constant amplitude" and "modulation frequency."

### b.   Lack of Enablement and Indefiniteness

In the alternative to non-infringement, Defendants argue that they are entitled to summary judgment because the patent is invalid for both lack of enablement and indefiniteness.  Lack of enablement and indefiniteness are affirmative defenses which must be proved by clear and convincing evidence because an issued patent is presumed valid.  See N.V. Akzo v. E.I. Dupont de Nemours, 810 F.2d 1148, 1150-51 (Fed. Cir. 1987).  Generally, analyzing a patent's invalidity requires construction of the claim at issue.  See SIBIA Neurosciences v. Cadus Pharm., 225 F.3d 1349, 1355 (Fed. Cir. 2000).  Here the court need not construe claim 1 for summary judgment purposes because Defendants allege that only one limitation of claim one renders the patent invalid for lack of enablement and indefiniteness — the last limitation of claim 1 that reads "to generate in synchronism with the modulation frequency action potentials in the treatment area," which limitation the parties agree should be given its ordinary meaning.

Defendants claim that the patent is non-enabling because it does not disclose how to create the apparatus recited in claim 1 such that it generates action potentials in the treatment area that are "in synchronism with the modulation frequency" (Dkt. 71 at 21).  Similarly, Defendants argue that claim 1 is indefinite because the limitation of "generat[ing] in synchronism with the modulation frequency action potentials in the treatment area" does not particularly point out and distinctly claim the subject matter which the applicant regards as his invention; specifically, that the '552 patent's

10

specification does not disclose to one of skill in the art how to generate action potentials in a treatment area in synchronism with the modulation frequency (Dkt. 71 at 23).

The only evidence that Defendants cite in support of invalidity is Feinberg's declaration, which states that the '552 patent specification does not provide any details as to how a person of skill in the art accomplishes the generation of such action potentials at the particular frequency that is demonstrated, and that the only way a person of skill in the art could purport to achieve this limitation is through experimentation. (Feinberg Decl., Dkt. 71-2, ¶ 10)  Feinberg further states that one of skill in the art "cannot know what the limitation 'generat[ing] in synchronism with the modulation frequency action potentials in the treatment area' actually means or what methods of generating action potentials in a treatment area would infringe on claim 1.  (Feinberg Decl., Dkt. 71-2, ¶ 12) In rebuttal, Plaintiffs' expert, Thomas, testified that the '552 patent clearly enables one of ordinary skill in the art to build the apparatus as defined and that the patent teaches that the generation of action potentials occurs when the described current waveform is applied. (Thomas Decl., Dkt. 72-3, ¶¶ 37-39)

Whether a claim is indefinite is a question of law.  Biomedino, LLC v. Waters Techs. Corp., 490 F.3d 946, 949 (Fed. Cir. 2007).  However, the present record leaves the court unable to determine indefiniteness as a matter of law because questions of fact remain.  The evidence on enablement and indefiniteness consists of contradictory expert opinions. Defendants' expert testifies that the patent is non-enabling and indefinite based on his testing.  However, Plaintiffs' expert, who also completed his own review of the patent and testing of the device (and whose qualifications have not been challenged by Defendants), specifically rebuts Feinberg's opinions on non-enablement and indefiniteness. (Thomas Decl., Dkt. 72-3, ¶¶ 37-39)

Further, "determining whether a claim is definite requires analysis of whether one skilled in the art would understand the bounds of the claim when read in light of the specification." <u>Solomon v. Kimberly-Clark Corp.</u>, 216 F.3d 1372, 1378 (Fed. Cir. 2000) (citation omitted). "A claim is not necessarily indefinite because, rather than defining the invention by what it is, the claim defines the invention by what it does." Herbert F. Schwartz, <u>Patent Law and Practice</u> 112 (5th ed. 2006) (citations omitted).  Plaintiffs' expert states that the generation of action potentials is what the apparatus does.  (Thomas Decl., Dkt. 72-3, ¶¶ 37, 39)  Neither party has sufficiently developed the record as to whether the last element of claim 1 is a specified function of a claim element. Notwithstanding, Plaintiffs' evidence creates a material issue of disputed fact.

At the summary judgment stage, the court cannot make credibility determinations. The court could determine indefiniteness as a matter of law only if there were no issue of disputed fact. Because Defendants' evidence on non-enablement and indefiniteness is squarely contradicted by Plaintiffs' evidence, summary judgment as to non-enablement and indefiniteness is improper.

## IV.     Conclusion

Upon consideration, it is **RECOMMENDED** that:

(1)     Axiom's Motion for Summary Judgment (Dkt. 71) be **DENIED IN PART** as to the last limitation of claim 1, "in order to generate in synchronism with the modulation frequency action potentials in the treatment area", and Defendants' affirmative defenses;

(2)     **RULING BE DEFERRED** as to non-infringement on the remainder of claim 1 pending a <u>Markman</u> hearing and construction of the terms "constant amplitude" and "modulation frequency"; and

(3)     the parties be ordered to submit a joint briefing schedule to the court with proposed dates and

deadlines for a <u>Markman</u> hearing and supporting papers.

**Date:  June 27, 2008**

ELIZABETH A JENKINS
United States Magistrate Judge

**<u>NOTICE TO PARTIES</u>**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. <u>See</u> 28 U.S.C. § 636(b)(1).

Copies to:
District Judge
Counsel of Record