UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HAKO-MED USA, Inc., *et al*.,

      Plaintiffs,

vs.                          Case No.: 8:06-cv-1790-T-33AEP

AXIOM WORLDWIDE, Inc.,

      Defendant.

_____/

## ORDER

This matter comes before the Court on Plaintiffs' motion for enhanced damages and attorney's fees (Doc. 168). Plaintiffs ask the Court to uphold the jury's finding that Defendant willfully infringed Plaintiffs' patent and award Plaintiffs enhanced damages by doubling the $450,000.00 royalty damages already provided to them by the jury. In addition, Plaintiffs seek their attorney's fees for the prosecution of the patent and trademark infringement claims and to be awarded prejudgment interest. The Court reached its decision after reviewing Defendant's response in opposition (Doc. 170), and the transcripts of the proceedings (Docs. 171-174).[1] For the reasons that follow, the Motion is **GRANTED in PART** and

_____

[1] Also before the Court are Defendant's Motions for Judgment as a Matter of Law on the issues of Infringement and Reasonable Royalty damages. (the "Motions," Docs. 178 and 179). The Court will address the Motions by separate Order. The parties should be aware that the relief provided in this Order is subject to the Court's ultimate disposition of the Motions.

**DENIED in PART**.

## I. Brief Pertinent Procedural and Factual Background

On September 28, 2006, Plaintiffs filed a motion for injunctive relief and requested that this Court enjoin Defendant, Axiom Worldwide, Inc., from continuing to market and/or sell Defendant's electrical nerve stimulation medical device entitled EPS8000/NVP8500 (Doc. 2). Simultaneously with the motion for a preliminary injunction, Plaintiffs filed a complaint and asserted claims against Defendants that included patent infringement in violation of United States Patent Laws, 35 U.S.C. § 271, *et seq*., and trademark infringement arising under the Lanham Act, 15 U.S.C. § 1114 (Doc. 6).

Prior to transferring this case to the undersigned, Judge James Whittemore adopted, with slight modifications (Doc. 63), Magistrate Judge Elizabeth Jenkins' Report and Recommendation (Doc. 50) granting Plaintiffs' request for a preliminary injunction on its trademark infringement claim only.

Plaintiff, Dr. Achim Hansjurgens, a resident of Germany, is the holder of United States Patent No. 5,573,552 (the "'552 patent") which was issued by the United States Patent Office on November 12, 1996. The '552 patent is for an electrotherapeutic apparatus that "operates in the medium frequency range between 1000 Hz and 100,000 Hz, with paired, diametrically opposed electrodes applied in

relation to a body part to be treated." (Trial Ex. 1).

Physicians use electrotherapy machines such as the one described in the patent to treat patients with various medical infirmities; the primary market for these machines consists of medical doctors and chiropractors. The patent describes the effects of the electrical stimulation device as pain alleviation, stimulation of striated and nonstriated muscles, influencing perfusion, the detumescent mechanisms, the checking of inflammatory processes, and promoting regeneration of, for example, wounds and accelerated healing of bones. (Amended Compl., Ex. 1).

Plaintiff, GMBH, is a privately owned German company established in 1991 by Dr. Hansjurgens and his former partner, Koch GMBH (Doc. 4; Doc. 27 at p. 3). In 2002, Kai Hansjurgens established Hako-Med USA, an affiliate of GMBH, that markets and sells the electrotherapeutic apparatus in the United States (Doc. 5; Doc. 27 at p. 3). Plaintiffs refer to the device's technology as internationally patented "Horizontal Therapy," which is the core of Plaintiffs' product and what makes Plaintiffs' product stand out in the niche industry of electromedicine. Plaintiffs market and sell this technology in the form of a machine called the ProElecDT2000/VasoPulse2000.

On October 3, 2000, the United States Patent and Trademark Office provided Plaintiffs with a certificate of registration for the mark VASOPULSE®, United States

Trademark Registration No. 2,390,719 (the "'719 mark"). Hako-Med USA uses the VASOPULSE® name in marketing its electrotherapy product.

Defendant competes with Plaintiffs in the electromedicine care market. Defendant began marketing and selling its EPS8000/NVP8500 product on July 28, 2005. It is undisputed that Defendant's machine directly competes with Plaintiffs' machine for the same share of the electrotherapy market.

Pursuant to the parties' *ore tenus* renewed joint motion for bifurcation, the Court bifurcated the case - the jury considered Plaintiffs' patent infringement claims and the Court considered their trademark infringement claim.

The following witnesses testified during the trial: Kai Hansjurgens, President of Hako-Med USA; James J. Gibson , President and CEO of Axiom Worldwide; Scott Johnson, Defendant's Chief of Engineering; Dr. Achim Hanjurgens; Barry N. Feinberg, Ph.D., P.E., expert witness for Defendant; Roger Bruce Fambro, Medical Device Distributor; and Stephen Thomas, attorney and expert witness for Plaintiffs.

After hearing both testimony from witnesses and argument from counsel on the trademark infringement claim, the Court found that Defendant had infringed upon Plaintiffs' trademark and ordered that the temporary injunction imposed earlier become permanent.

At the conclusion of the trial on the patent infringement claims, the jury found that Defendant willfully infringed Plaintiffs' patent under the "doctrine of

equivalents." The jury awarded Plaintiffs $450,000.00 as a reasonable royalty for Defendant's sale of its infringing device. On the Verdict Form, the jury answered "yes" in response to Question No. 6, which read, "Do you find that the Plaintiffs proved by clear and convincing evidence that the Defendant willfully infringed the '552 patent?" (Doc. 170, Ex. 3 at p. 3). Defendant made an *ore tenus* Motion for Judgment as a Matter of Law as to the issues of invalidity and the doctrine of equivalents, which the Court took under advisement. The Court also set the briefing schedule for arguments on the jury's finding of willful infringement and Plaintiffs' request for enhanced damages and attorney's fees on both the patent and trademark infringement claims. Those briefs were submitted timely.

## II.    Applicable Law

Upon a finding of infringement, 35 U.S.C. § 284 requires a court to award "damages adequate to compensate for the infringement." The same section gives a court discretion to increase the damages up to three times the amount found or assessed.

Assessing enhanced damages is a two-step process: first, the fact finder must determine if an accused infringer is guilty of conduct, such as willfulness, upon which enhanced damages may be based, and, if so, the court then exercises its discretion to determine if the damages should be enhanced given the totality of the circumstances.

Mentor H/S, Inc. v. Med. Device Alliance, Inc., 244 F.3d 1365 (Fed. Cir. 2001).[2] A finding of willful infringement does not mandate enhanced damages; instead, the paramount determination is the egregiousness of the defendant's conduct based on all of the facts and circumstances. Electro Scientific Indus., Inc. v. Gen. Scanning Inc., 247 F.3d 1341 (Fed. Cir. 2001). However, once willful infringement is established, no additional finding of bad faith is required for enhancing the damage award. TWM Mfg. Co., Inc. v. Dura Corp., 789 F.2d 895 (Fed. Cir. 1986). A jury's finding that defendants willfully infringed is advisory only. White v. Mar-Bel, Inc., 509 F.2d 287 (11th Cir. 1975) (citing to 35 U.S.C.A. § 284 (West 2009)). Where the jury finds willful infringement, the court should provide reasons for not enhancing the damage award. Tate Access Floors, Inc. v. Maxcess Tech., Inc., 222 F.3d 958 (Fed. Cir. 2000).

Noting that there is no statutory guide as to when enhanced damages ought to be awarded, the Federal Circuit has held that "an award of enhanced damages requires a showing of willful infringement." In re Seagate Tech., LLC, 497 F.3d 1360, 1368 (Fed. Cir.2007). In this context, the concept of willfulness includes reckless behavior.

---

[2] The Federal Circuit is the only one of the thirteen federal appeals courts whose jurisdiction is determined entirely on the subject of the lawsuits it hears. Specifically, it is the job of the Federal Circuit to hear all appeals from United States District Courts related to, among other things, decisions of any of the United States District Courts where the original action included a complaint arising under the patent laws. Accordingly, the Court cites to decisions from the Federal Circuit as authority.

Id. at 1371. "[T]o establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." Id. "If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." Id.

In Read Corp. v. Portec, Inc., 970 F.2d 816, 827 (Fed. Cir.1992), the court identified nine factors (commonly referred to as the "Read factors") that a district court may take into consideration in deciding whether to grant enhancement of damages and in determining the amount thereof: (1) whether the defendant deliberately copied the ideas or design of another; (2) whether the defendant, when he knew of the other's patent protection, investigated the scope of the patent and formed a good faith belief that it was invalid or that it was not infringed; (3) the defendant's behavior as a party to the litigation; (4) the defendant's size and financial condition; (5) the closeness of the case; (6) the duration of the defendant's misconduct; (7) remedial action by the defendant; (8) the defendant's motivation for harm; and (9) whether defendant attempted to conceal its infringement.

While it is not a rule of law that patent infringement under the doctrine of equivalents is insufficient to warrant enhanced damages, the avoidance of literal

infringement is a fact to be considered when determining whether there has been willful infringement. See WMS Gaming, Inc. v. Int'l Game Tech., 184 F.3d 1339 (Fed. Cir. 1999).

Plaintiffs request payment of attorney's fees for patent infringement pursuant to 35 U.S.C. § 285. Under this statute, a court may award reasonable attorney's fees to the prevailing party in an "exceptional case." In determining whether to award fees, the court should look to the totality of the circumstances, Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc., 231 F.3d 1339, 1346-47 (Fed. Cir. 2000), and may consider the nine Read factors.

Whether a case can be considered "exceptional" should be based on a variety of factors, such as willful or intentional infringement, inequitable conduct before the Patent and Trademark Office, vexatious or unjustified litigation, or other misfeasant behavior. Multiform Desiccants, Inc. v. Medzam, Ltd., 133 F.3d 1473, 1481-82 (Fed. Cir.1998). "A finding of such 'exceptional' circumstances does not, however, mandate an award of attorney fees." Reactive Metals and Alloys Corp. v. ESM, Inc., 769 F.2d 1578, 1582 (Fed. Cir. 1985). In an effort to avoid penalizing a party for merely defending or prosecuting a lawsuit, the Federal Circuit has determined that district courts should not routinely assess attorney's fees against a losing party in patent litigation. Revlon, Inc. v. Carson Prod. Co., 803 F.2d 676, 679 (Fed. Cir. 1986). The decision to award attorney's fees must be made in light of the totality of

8

the circumstances and the party seeking the award bears the burden of proving facts which establish the exceptional character of the case by clear and convincing evidence. <u>Merck & Co., Inc. v. Mylan Pharm., Inc.</u>, 79 F.Supp. 2d 552, 555 (E.D. Pa. 2000), citing <u>Machinery Corp. of America v. Gullfiber</u>, 774 F.2d 467, 471 (Fed. Cir. 1985).

Plaintiffs also seek attorney's fees under 17 U.S.C. § 1114 for trademark infringement.  Title 15 U.S.C., Section 1117(a) provides, in pertinent part:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. . . . The court in exceptional cases may award reasonable attorney fees to the prevailing party.

While the term "exceptional" is not defined in the statute, "the Committee on the Judiciary stated that the remedy of attorneys' fees 'should be available in infringement cases where the acts of infringement can be characterized as 'malicious,' 'fraudulent,' 'deliberate,' or 'willful.'" <u>Playboy Enter., Inc. v. Baccarat Clothing Co., Inc.</u>, 692 F.2d 1272, 1276 (9th Cir. 1982).

The fact that an act of infringement is found to justify an award of increased damages for willful infringement is not sufficient in itself to make the case

exceptional as to justify an award of attorney's fees. <u>Lang v. VSL, Corp.</u>, 219 U.S.P.Q. (BNA) 625 (E.D. Va. 1982).

## III.    Analysis

Plaintiffs acknowledge that this is not a "polar case" because Defendant's conduct was not at the "most egregious end of the spectrum." (Doc. 168, pp. 12-13). Plaintiffs do not ask for the treble damages allowed to them by statute; instead they ask the Court to double the $450,000.00 award from the jury. They claim that double damages will serve the purposes of deterrence and punishing Defendant's willful infringement while fully compensating but not unjustly enriching Plaintiffs. (Doc. 168, pp. 12-13). While the Court agrees with some portions of Plaintiffs' assessment of the case, the Court does not deem it appropriate to grant Plaintiffs the majority of the relief requested in the Motion.

In summary, at this juncture, the Court concludes that (1) it will not overturn the jury's finding that Defendants willfully infringed the '552 patent;[3] (2) the evidence Plaintiffs offered in support of the Motion and the record developed at trial, considered in light of the Read factors, is insufficient to warrant any enhancement in damages; (3) Plaintiffs failed to prove that they are entitled to attorney's fees for

---

[3] <u>See</u> <u>Minks v. Polaris Indus., Inc.</u>, 2007 WL 788418 (M.D. Fla. Mar. 14, 2007) (assuming that jury's finding of willful infringement was correct for consideration of enhanced damages, but reserving right to reevaluate this finding in the context of a Rule 50 motion).

patent infringement; and, (4) Plaintiffs should be awarded attorney's fees for trademark infringement and prejudgment interest. A detailed analysis follows.

### A.     Willful Infringement

The logical starting point for the Court's analysis is the jury's finding that Defendant willfully infringed the '552 patent. A jury's finding of willful infringement authorizes the Court to award enhanced damages and attorney's fees. See generally Minks v. Polaris Indus., Inc., 2007 WL 788418 (M.D. Fla. March 14, 2007). However, such a finding is not a mandate for the Court to award enhanced damages and attorney's fees. Read Corp., 970 F.2d at 826.

The Court is very mindful of the deference that it must accord any decision reached by the jury. Assuming that the jury was correct and that there was sufficient evidence of willfulness to sustain the jury's verdict, the Court will not award enhanced damages in this case.

The Court finds that in light of the punitive function of enhanced damages, such damages are not warranted in this case. Furthermore, the Court finds that the record evidence supporting the jury's threshold finding of willful infringement is not of the weight and strength to support the imposition of enhanced damages. The Court bases its conclusion on its analysis of the evidence and witness testimony presented at trial. See S.C. Johnson & Son, Inc., v. Carter-Wallace, Inc., 781 F.2d 198, 201 (Fed. Cir. 1986) (the court refused to enhance damages where the question of

11

willfulness was close because "[t]he trial judge is in the best position to weigh considerations such as the closeness of the case, the tactics of counsel, the conduct of the parties, and any other factors that may contribute to a fair allocation of the burdens of litigation as between winner and loser").

Under Seagate, willfulness requires a two-prong evidentiary showing. First is the threshold objective standard, under which the "patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." Seagate, 497 F.3d at 1370-71. Second, "[i]f this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk . . . was either known or so obvious that it should have been known to the accused infringer." Id.

Defendant focuses its arguments on the first prong of Seagate. Essentially, Defendant argues that the jury's finding cannot survive because Plaintiffs failed to produce the requisite clear and convincing evidence at trial that Defendant acted with "objective recklessness" with respect to the '552 patent. (Doc. 170 at p. 1).

The Court will not recite all of Defendant's arguments, but by way of example, Defendant claims that the first prong of Seagate's willfulness inquiry cannot be met where a defendant presents a substantial defense at trial. (Doc. 170 at p. 5, citing to TGIP, Inc. v. AT&T Corp., 427 F.Supp. 2d 561, 579 (E.D. Tex. 2007)). Defendant also claims that the first prong of Seagate cannot be met where a jury finds

infringement under the doctrine of equivalents. (Doc. 170 at p. 4 (citations omitted)).

The Court appreciates Defendant's focus and understands its arguments. These arguments, supported by case law, provide sufficient bases for the Court to conclude that the jury erred when it found Defendant willfully infringed on the '552 patent.[4] However, assuming that the jury's finding is correct or, at the very least, that the jury's finding allows Plaintiffs to overcome the objective prong of Seagate, the Court turns to the second prong of Seagate and continues its analysis of willful infringement under the Read factors.

B.    The Read Factors

Plaintiffs contend that "the first through third, fifth, sixth, eighth and ninth [Read] factors" favor them, the fourth factor favors Defendant and the "parties are close to being equal with respect to the seventh factor, however, this factor slightly tips in favor of [Plaintiff] Hako-Med." (Doc. 168 at p. 5). As mentioned above, Defendant does not address directly the separate Read factors.

In considering enhanced damages, "the paramount determination . . . is the egregiousness of the defendant's conduct, based on all the facts and circumstances." Electro Scientific Industries, Inc. v. General Scanning, Inc., 247 F.3d 1341, 1353

_____

[4] Although not raised by Defendant, the Court also notes that in Seagate, the Federal Circuit suggests that if a patentee fails to obtain a preliminary injunction on the issue of patent infringement, as was the case here, that fact may show an absence of an objectively high likelihood that a defendant's actions constituted infringement of a valid patent. Seagate, 497 F.3d at 1374.

13

(Fed. Cir. 2001) (citations omitted).  The Court now addresses each of the nine Read factors in turn.

### (1)      Deliberate Copying

Plaintiffs contend that Mr. Scott Johnson's admission that he "disassembled" Plaintiffs' device (Doc. 172, p. 86, lines 4-5) combined with his admitted "awareness" of the '552 patent (Doc. 172, p. 86, lines 8-12: p. 88, line 25 - p.89, lines 1-12) are evidence that Defendant deliberately copied Plaintiffs' ideas.

Defendant claims that the admission that Mr. Johnson disassembled Plaintiffs' device is not evidence of deliberate copying.  Rather, Defendant argues, the admission of  "disassembling" is proof of the Defendant's concerted effort to "design around" the '552 patent. (See e.g., Trial Tr. Doc. 172, p. 230:  lines 22-25-p. 231: lines 1-17). Defendant points to the testimony of its expert witness, Dr. Barry Feinberg, that "designing around" a patent is a standard practice in the medical device industry. (Trial Tr. Doc. 172, p. 184: lines 13-25-p. 185: lines 1-21).  Defendant also claims that, in contrast to its demonstrated good faith not to infringe, Plaintiffs failed to provide the Court with any evidence or testimony that Defendant deliberately copied the alleged invention of the '552 patent or intended to infringe the '552 patent. (Doc. 170 at p. 6).

The Court undertook an independent review of pertinent case law on this topic, including review of the case law cited by Defendant.  This review made it clear that

14

(1) designing around a patent is standard and even encouraged in the medical device industry and (2) a defendant's efforts to design round a patent can preclude a finding of willfulness under Seagate. See e.g., WMS Gaming, Inc. v. International Game Tech., 184 F.3d 1339 (Fed. Cir. 1999); State Indus. Inc. v. A.O. Smith Corp., 751 F.2d 1226 (Fed. Cir. 1985).

The case of Rhino Assocs., L.P. v. Berg Mfg. and Sales Corp., 531 F. Supp.2d 652 (Fed. Cir. 1993), is informative on both of the above points. In Rhino, the court denied the plaintiff's request for enhanced damages stating:

> Given the attempt to design around the "essentially one piece" requirement in the '889 patent, the court finds that Berg did not act with "an objectively high likelihood that its actions constituted infringement of a valid patent." In re Seagate Tech., LLC, 497 F.3d at 1371; see also Westvaco Corp. v. Int'l Paper Co., 991 F.2d 735, 745 (Fed. Cir. 1993) ("One of the benefits of a patent system is its so-called 'negative incentive' to 'design around' a competitor's products, even when they are patented, thus bringing a steady flow of innovations to the marketplace. It should not be discouraged by punitive damage awards except in cases where conduct is so obnoxious as clearly to call for them." (quoting State Indus., Inc. v. A.O. Smith Corp., 751 F.2d 1226, 1235-36 (Fed. Cir. 1985))). Therefore, Rhino has not demonstrated objective recklessness by [defendant] and enhanced damages are not warranted.

Rhino Assocs., 531 F.Supp. 2d. at 658-59. The evidence cited by Plaintiffs is not conclusive evidence of deliberate copying. Essentially, Plaintiffs ask the Court to turn an inference into evidence, and this is something the Court declines to do. Thus, the Court finds that this factor weighs against enhancement.

**(2)     Investigation of the Scope of the Patent/Good Faith Belief
          Regarding Defenses**

Plaintiffs contend that there is no competent evidence that Defendant had a good faith belief that the '552 patent was invalid or that Defendant did not infringe upon the '552 patent after first seeking competent legal advice prior to launching its product in the marketplace. (Doc. 168, pp. 6-7).[5]

Defendant claims that the uncontroverted trial testimony demonstrates that its intention was always to avoid infringement of the '552 patent and that it affirmatively attempted to do just that. As cited above, Defendant offers the testimony of its chief engineer, Mr. Scott Johnson, that Defendant was aware of and carefully examined the '552 patent as it developed the EPS8000 to make sure that it did not infringe. Mr. Johnson was asked who provided guidance to Defendant in the "engineering process to not build a device to not infringe?" (Trial Tr. Doc. 173, p. 10: lines 6-9). Mr. Johnson responded that they had a "large body of people that reviewed these things . . . engineering staff, medical staff, . . . regulatory staff." (Trial. Tr. Doc. 173, p. 10: lines 10-13).

Defendant's President and CEO, Mr. James Gibson, also testified at length about the composition of Defendant's development team and elaborated on the

---

[5] The focus of this Read factor is on Defendant's good faith belief in its defense. Thus, the Court has confined its analysis to the testimony of Defendant's expert, Dr. Barry Feinberg and its chief engineer, Mr. Scott Johnson. The competing claims of the parties' experts will be addressed under Read factor No. 5, Closeness of the Case.

processes that it went through when deciding to make the EPS8000, which included receiving input from its internal engineering and production departments, as well as information from clinicians and a heavily credentialed medical advisory board. (Trial Tr. Doc. 173, p. 27: lines 1-30: line 5).

Defendant claims that it mounted a substantial invalidity and lack of infringement defense at trial. Defendant cites to testimony from its expert, Dr. Barry Feinberg, that it did not infringe on the '552 patent and that the '552 patent was invalid for lack of enablement.[6] At trial, Dr. Feinberg testified about his credentials. Dr. Feinberg has forty years experience as a biomedical engineer and has served as an expert witness in twenty-six patent cases (Trial Tr. Doc. 172, p. 187: line 24-p. 188: line 10). Dr. Feinberg also testified that he studied the '552 patent extensively (Trial Tr. Doc. 172, p. 188: lines 23-24 and p. 202: lines 21-23) and participated in every phase of the EPS8000's development, including testing for the reports and programs (Trial Tr. Doc. 172, p. 202: line 25 - p. 203: line 9).

After extensive questioning from Defendant's counsel that included a

---

[6] As part of its defense against Plaintiffs' claim of patent infringement, Defendant argued that claims 1, 3 and 5 of the '552 patent were invalid for lack of enablement. As explained in Jury Instruction No. 8, enablement means that "[t]he written description set forth in a patent must disclose sufficient information to enable or teach one skilled in the field of the invention to make and use the full scope of the claimed invention. This requirement is known as the enablement requirement. If a patent claim is not enabled, it is invalid." (Doc. 167, Jury Instruction No. 8).

demonstration of the EPS8000, Dr. Feinberg testified that the EPS8000 did not infringe the '552 patent and that the '552 patent was invalid based on the theory of enablement.

Defendant claims that even if "such a defense proves unsuccessful [this] does not establish that infringement was willful." (Doc. 170 at p. 5, citing to TGIP, Inc. v AT&T Corp., 427 F.Supp. 2d 561, 579 (E.D. Tex. 2007)).

One way to establish a good faith basis for a belief that a product does not infringe or that the subject patent is invalid is to obtain and rely upon an independent written opinion from a patent attorney, sometimes referred to as an "invalidity opinion." Both parties discuss Defendant's failure to secure an invalidity opinion. First, Plaintiffs claim that at trial Defendants failed to produce any evidence that it secured an exculpatory opinion of counsel and that this is evidence of its lack of good faith. Second, and as an alternative, Plaintiffs claim that even if Defendant did secure such opinions, the Court "cannot determine whether the opinions were sufficient to instill a belief that a court might reasonably hold the patents invalid." (Doc. 168, pp. 6-7).

Defendant contends that, since Seagate, there is no affirmative obligation to seek the opinion of counsel and, moreover, the failure to secure an opinion is not entitled to a negative inference. (Doc. 170, pp. 6-7 (citations omitted)). Defendants note that during their cross-examination of Mr. James Gibson, Plaintiffs attempted to

18

elicit testimony about whether Defendant had obtained a clearance opinion from counsel regarding the '552 patent. Defendant's counsel precluded Mr. Gibson from answering by asserting the attorney-client privilege. (Doc. 170 at p. 6). Plaintiffs' counsel also asked Mr. Scott Johnson if he had ever seen an "opinion letter from counsel that you could proceed to do what you were doing in the design of the EPS8000 device." (Trial. Tr. Doc. 172, p. 86: lines 14-17). Defendant again objected, asserting attorney-client privilege, and Mr. Johnson did not answer Plaintiffs' counsel's question. (Trial. Tr. Doc. 172, p. 86: lines 18-22).[7] During closing arguments, Plaintiffs again attempted to cast Defendant's alleged failure to secure an invalidity or clearance opinion in a negative light to the jury. (Trial Tr. Doc. 173, p. 201: lines 17-21). Defendant characterizes Plaintiffs' actions as misplaced and improper.

Currently, the failure of a patent infringement defendant to obtain exculpatory opinion of counsel does not give rise to an adverse inference or presumption that such opinion would have been unfavorable. Insituform Tech., Inc. v. CAT Contracting, Inc., 385 F.3d 1360, 1377 (Fed. Cir. 2004). Prior to Seagate, the Federal Circuit imposed an affirmative "duty of care" on a potential infringer to determine whether

---

[7] Mr. Stephen Thomas testified that he had not seen "such opinion of counsel" in response to the question, "[h]ave you seen from [Defendant] in this case . . . any type of opinion of counsel, [or] a letter to consider whether or not perhaps you were wrong in your analysis?" (Trial Tr. Doc. 173, p. 66: lines 14-18).

a defendant had infringed upon a patentee's rights. An integral part of that the affirmative duty included securing an "invalidity opinion" from competent legal counsel In <u>Seagate,</u> however, the Federal Circuit overruled its prior precedents applying the affirmative duty of care and, in doing so, abandoned the affirmative duty to obtain an invalidity opinion.

Under a Read factor analysis, whether a defendant secured an invalidity opinion is part of the Court's consideration of the "totality of the circumstances." Here, the Court finds that although Defendant failed to produce any evidence that it secured an invalidity opinion, it did produce credible evidence that it investigated the scope of the '552 patent and that it had a good faith belief that the '552 patent was invalid and that the EPS8000 was not infringing. Thus, the court finds that this factor does not favor enhancement.

### (3) Litigation Conduct

This factor requires the Court to look at Defendant's behavior throughout the course of the litigation. Plaintiffs suggest that Defendant's litigation behavior was abusive or in bad faith. (Doc. 168 at p.7). As an example of unacceptable litigation conduct, Plaintiffs cite to Defendant's abandonment of all the defenses raised in its counterclaim save for enablement. Defendant offers no direct response to Plaintiffs' arguments on this factor.

During the trial, the Court observed nothing in Defendant's conduct to warrant

enhanced damages. Review of the procedural history of the case and the evidence adduced at trial reveals no untoward litigation conduct. Defendant reduced the ultimate number of defenses it pursued at trial and the jury rejected its defense. However, this reduction and rejection are not indicative that Defendant's behavior was abusive or the actions undertaken during the course of litigation and during trial were committed in bad faith.

Plaintiffs undermine their own argument by stating that counsel "behaved in a professional and admirable fashion throughout this litigation." (Doc. 168 at p. 7). The Court agrees with this assessment. Thus, this factor does not support enhancement.

### (4) Defendant's Size/Financial Condition

Plaintiffs cede this factor to Defendant, stating "this factor weighs in favor of [Defendant] by [Plaintiffs] giving it the benefit of the doubt." (Doc. 168 at p. 8). Defendant offers no direct argument on this factor. The only specific financial information adduced at trial regarding Defendant's overall economic health was from its President, Mr. James Gibson, who testified that in 2005 Defendant was a medium-sized corporation with a market capitalization of $40 million (Doc. 172, p.74: lines 12-13) and that because of the current economic environment, Defendant had laid off some of its employees. (Trial Tr. Doc. 173, p. 30: lines 6-8).

Mr. Gibson also testified that its EPS8000 product line did not generate a profit

for the company. He claimed that as of November 2006, Defendant had sold seven

of its EPS8000 model machines with these sales totaling $200,000. (Trial Tr. Doc.

173, p. 30: lines 14-25). Finally, Mr. Gibson testified that he believed the EPS8000

would have been profitable if not for the current economic downturn. (Trial Tr. Doc.

173, p. 31: lines 1-18).

The test under this factor is Defendant's overall financial health. Thus, the

information elicited at trial about the EPS8000's profitability and sales is informative,

but not determinative of the issue. Even considering the current economic downturn,

there was no direct evidence adduced at trial that Defendant's payment of an

enhanced award would seriously impair its financial well-being. Alternatively, there

was no direct evidence that Defendant has not suffered significant setbacks due to the

recent downturn in the economy. Plaintiffs may have ceded this factor to Defendant,

but the Court does not. Instead, the Court finds that this factor is neutral and does not

favor either party's position.

**(5)    Closeness of Case**

A review of the procedural history of the case reveals it was extensive

(multiple hearings and orders entered by the Court) and protracted (taking three years

to come to trial). Even this cursory review demonstrates that this case was heavily

contested up to and through trial. A particular example of this is the parties' *Motions*

*in Limine*, which included <u>Daubert</u> motions. On the eve of trial, the Court conducted

a <u>Daubert</u> hearing to address the parties' concerns about each other's expert witnesses.[8]  At the conclusion of the <u>Daubert</u> hearing, the Court found both experts extremely qualified and allowed them to testify.

During trial, the experts offered divergent opinion testimony  about the '552 patent's validity and whether the EPS8000 was an infringing device.  Mr. Stephen Thomas, a patent attorney, testified on Plaintiffs' behalf. As already discussed above, Defendant offered the expert testimony of Dr. Barry Feinberg, a biomedical engineer with extensive patent review experience.

In essence, and in plain English, Dr. Feinberg testified at length that the EPS8000 did not infringe on Plaintiffs' '552 patent because the electrical stimulation it provides is different than the electrical stimulation Plaintiffs' patent-protected device provides. Dr. Feinberg also testified that the '552 patent was not valid because it was not enabled - that is, a biomedical or electrical engineer could not look at the '552 patent and understand how to make the invention.

In contrast, Mr. Thomas testified that the '552 patent was enabled, thus valid, and that the EPS8000 infringed. Through Mr. Thomas' testimony, Defendant essentially attempted to demonstrate that the EPS8000 performed differently than any

---

[8]  Plaintiffs filed a <u>Daubert</u> Motion *In Limine* to Preclude Infringement Testimony by Dr. Feinberg (Doc. 131) and Defendant filed a <u>Daubert</u> Motion to Exclude the Declaration and Testimony of Stephen Thomas or, in the Alternative, to Exclude Any Reference to Mr. Thomas' Being an Attorney (Doc. 132).

device produced under the '552 patent would. That the jury did not ultimately find for Defendant does not automatically mean that this factor weighs in Plaintiffs' favor. Consideration under this factor is not a question of which side won or lost the case ultimately. Here the Court considers the parties' divergent expert opinions. If each divergent theory stands by itself the case is by definition a close one. Here, both parties' experts presented viable and credible alternatives to the jury for deliberation - it was a close case. Therefore, the Court cannot find that this factor weighs in favor of enhancement.

### (6)     Duration of Misconduct

The jury found that Defendant infringed on the '552 patent from July 2005, through November 26, 2006. When considering the duration of Defendant's misconduct, Plaintiffs ask the Court to consider Defendant's alleged failure to revise its competing device. However, that consideration is best addressed in Read factor No. 7, Remedial Action.

Based on the trial record, the duration of Defendant's known misconduct was the relatively short sixteen-month period from July 2005 through November 26, 2006. This factor does not favor enhancement.

### (7)     Remedial Action Taken by Defendant

In support of this factor, Plaintiffs claim that Defendant kept manufacturing and selling its infringing EPS8000 product during the course of this litigation.

Defendant counters that "a party may continue to manufacture and may present what in good faith it believes to be a legitimate defense without risk of being found on that basis alone a willful infringer." <u>TGIP, Inc. v AT&T Corp.</u>, 427 F.Supp. 2d 561, 579 (E.D. Tex. 2007). In addition, Defendant claimed at trial that it revised the EPS8000 after November 2006.

Plaintiffs bear the burden of proof on each Read factor. Plaintiffs failed to adduce convincing evidence that the EPS8000 was not revised after November 2006.[9] Plaintiffs claim the only evidence of revision is Defendant's self-serving statements that the revision took place. Defendant offered witness testimony about revision; for example Mr. Scott Johnson testified under oath multiple times during trial the EPS8000 was revised after November 2006. (<u>See</u>, <u>e.g.</u>, Johnson Test., Trial Tr. Doc. 173, p. 11: lines 19-p. 15: line 20 and p. 19: lines 8- 21: line 21). Defendant's evidence on revision is weak, but it is evidence and it was not necessarily effectively rebutted by Plaintiffs. The Court finds therefore that this factor does not favor enhancement.

---

[9] This failure may be due in part to the Court's ruling on Defendant's *Motion in Limine* (Doc. 137). The Court granted Defendant's request to preclude Plaintiffs from introducing any evidence of the United States Food and Drug Administration's 510(k) procedures and materials. Defendants argued that this information was irrelevant to any patent or trademark claims. Plaintiffs conceded that the information was not relevant to Plaintiffs' case and acknowledged that none of the information was offered on the issue of infringement. Plaintiffs only argument in favor of inclusion was that the information may be relevant for some possible rebuttal claim.

**(8)    Defendant's Motivation for Harm**

In making a determination about this factor, the Court looks to Defendant's marketplace conduct. <u>Joyal Prod., Inc. v. Johnson Elec. N.A., Inc.</u>, 2009 WL 512156 at *8 (D.N.J. Feb. 27, 2009). Here, the parties are the only competitors in a specialized niche market. Competitive behavior is to be expected. However, Plaintiffs claim that Defendant was not simply competitive but "set out to destroy," Plaintiff, Hako-Med. (Doc. 168 at p. 11). Plaintiffs ask the Court to "assess the Defendant's state of mind" by viewing an infomercial for Defendant's competing device. (Doc. 168, pp. 10-11). Plaintiffs claim that the "infomercial is direct evidence of intended harm to Plaintiffs . . ." (Doc. 168 at p. 11). This infomercial is not direct record evidence and the Court will not consider it.

As additional "proof of harm," Plaintiffs offer Mr. Kai Hansjurgens' testimony that he engaged in discussions with Defendant in late 2000 or 2001 about forming a potential joint venture in Plaintiffs' ProElecDT system. Specifically, Mr. Hansjurgens testified that he visited Defendant's facility and met with representatives from Defendant, including Mr. James Gibson, to discuss Mr. Hansjurgens' custom manufacturing for Defendant that it could sell under its name. (Trial Tr. Doc. 172, p. 20: lines 25- 23: line 10).

A potential joint venture that never came to fruition is circumstantial evidence at best, and certainly not sufficient evidence for the Court to find that Defendant "set

out to destroy" Hako-Med.  Plaintiffs provided the Court with what can be characterized as  evidence of Defendant's normal, competitive desire to market and sell the EPS8000 in the marketplace.  They have certainly not provided the Court with enough evidence to find that this factor favors enhancement.

### (9)    Defendant's Attempt to Conceal Infringement

There is no evidence that Defendant attempted to conceal its infringement. There is evidence, as discussed above, however, that Defendant did not believe that its device was infringing upon the '552 patent and that it believed that the '552 patent was invalid.  Accordingly, this factor weighs against enhancement.

After considering the totality of the circumstances presented, and for the reasons stated above, the Court finds that enhanced damages are not warranted in this case.

### C.    Attorney's Fees for Patent Infringement

Based on the Court's review of the Read factors, the Court cannot find that this case is exceptional so as to justify an award of attorney's fees on the patent infringement claims.  The remaining factors for determining whether the present case is exceptional (such as inequitable conduct before the Patent and Trademark Office, vexatious or unjustified litigation, or other misfeasant behavior) are not applicable in the present case - despite Plaintiffs' best efforts to characterize some of Defendant's actions as such. Therefore, Plaintiffs' claim for attorney's fees for patent infringement

will be denied.

**D.     Attorney's Fees for Trademark Claim**

The trial was bifurcated and the parties made their arguments directly to the Court on the issue of trademark infringement.  Here, the Court finds that Defendant willfully infringed the rights of Plaintiffs in their federally registered mark, VASOPULSE®, making the award of attorney's fees appropriate. The record demonstrates that Plaintiffs prevailed at the preliminary injunction stage of this case and again at trial on the issue of trademark infringement.  In addition, the Court finds that Defendant's attempt to cancel Plaintiffs' trademark with a filing of a petition to the Trademark Trial & Appeals Board after receiving Plaintiffs' cease and desist letter supports a finding that Defendant acted in bad faith. Mr. Gibson testified that "vasopulse" was descriptive of Defendant's product and not intended to infringe on Plaintiff's VASOPULSE mark.  This assertion is not supported by the record, and the Court cannot credit it.  Thus, the Court finds that, based on the procedural history of this case, Plaintiffs should be awarded their reasonable attorney's fees for trademark infringement.

**E.     Prejudgment Interest**

The Supreme Court in General Motors Corp. v. Devex Corp., 461 U.S. 648 (1983), held that prejudgment interest should ordinarily be awarded in patent cases, but that such an award is not automatic. "For example, it may be appropriate to limit

prejudgment interest, or perhaps even deny it altogether, where the patent owner has been responsible for undue delay in prosecuting the lawsuit. There may be other circumstances in which it may be appropriate not to award prejudgment interest." Bio-Rad Labs., Inc. v. Nicolet Instrument Corp., 807 F.2d 964, 967 (Fed. Cir. 1986).

The Court "is afforded wide latitude in the selection of interest rates, and may award interest at or above the prime rate." See Uniroyal, Inc. v. Rudkin-Wiley Corp., 939 F.2d 1540, 1545 (Fed. Cir. 1991) (citation omitted); see also, Lam, Inc. v. Johns-Manville Corp., 718 F.2d 1056, 1066 (Fed. Cir. 1983) (affirming district court's award of prejudgment interest at a higher-than-prime rate where plaintiff had borrowed money at or above the prime rate in order to continue its operations).

In selecting an appropriate interest rate, however, the Court must be mindful that "[p]rejudgment interest has no punitive, but only compensatory, purposes." Oiness v. Walgreen Co., 88 F.3d 1025, 1033 (Fed. Cir. 1996). The purpose of prejudgment interest is to place a plaintiff "in the situation [it] would have occupied if the wrong had not been committed." Fromson v. Western Litho Plate and Supply Co., 853 F.2d 1568, 1574 (Fed. Cir. 1988) (patent case).

Applying these standards to this case, the Court concludes that there are no circumstances precluding awarding prejudgment interest. Plaintiffs have not provided the Court with a suggested interest rate or requested that the rate the Court chooses be compounded in any special manner. Thus, the Court must determine what an

appropriate interest rate is under the circumstances. Courts have applied various interest rates, including the prime rate, corporate bond rates, a consumer credit rate, the rate the patentee paid for borrowed funds, and the rate the patentee earned on spare funds, etc. See NTP Inc. v. Research in Motion, Ltd., 270 F.Supp. 2d 751, 763 (E.D.Va. 2003) (citing to Donald S. Chisum, Chisum on Patents § 20.03[4][a][v] (2002)).

The Court finds that in situations where Plaintiffs have offered no evidence that they were forced to borrow funds, the best interest rate to use is the prime rate. Review of the prime rate from September 2006 through September 2009, reveals that the prime rate has ranged from a high of 8.25% to a low of 3.25%. See http://www.wsjprimerate.us/wall_street_journal_prime_rate_history.htm (last visited on September 10, 2009). The Court finds therefore, that the blended rate of 5.5% compounded annually is appropriate under the circumstances of this case.

IV.    Conclusion

Accordingly, it is

ORDERED, ADJUDGED and DECREED that:

(1)    The Motion (Doc. 168) is GRANTED in PART as to Plaintiffs' request for Attorney's Fees for prosecution of the Trademark Infringement Claim and the award of Prejudgment interest and DENIED as to all other relief sought.

(2)    The Clerk is directed to enter judgment in favor of Plaintiffs in the

amount of $450,000.00, with appropriate prejudgment interest calculated at the rate of 5.5% compounded annually from the date of infringement of September 28, 2006, through the date of judgment and to **CLOSE** this case.

(3)     Plaintiffs are directed to file a memorandum in support of their request for reasonable attorney's fees for the prosecution of the trademark infringement claim, or Count III of the Amended Complaint, within ten days of the date of this Order. If Defendant finds it necessary to file objections to Plaintiffs' request for fees, the objections must be filed within ten days thereafter.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>22nd</u> day of September 2009.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to:     Counsel of Record