**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**CASE NO:** 8:06-cv-1790-VMC-EAJ

**HAKO-MED USA, INC.,
ET. AL.,**

    Plaintiffs,

vs.

**AXIOM WORLDWIDE, INC.,
ET. AL.,**

    Defendants.
_____/

**PLAINTIFFS' REVISED MEMORANDUM FOR
AWARD OF ATTORNEY'S FEES**

The Plaintiffs, Hako-Med USA, Inc., Hako-Med Gmbh, Achim Hansjurgens and E-Mos, etc., by and through its undersigned counsel, and pursuant to the Court's Order of April 28, 2010 at Doc. 200, hereby revises its previously filed memorandum for award of attorneys fees (Doc. 192) and states:

**I.    Summary Of The Proceedings.**

The Plaintiffs were the prevailing party as to both the preliminary injunctive relief and permanent relief as to Count III of the Amended Complaint. The Plaintiffs now seek an Order awarding an amount of attorney's fees incurred by the Plaintiffs. In support of this award, the Plaintiffs had attached the Affidavit of Craig M. Rappel (primary trial counsel) and the Affidavit of Stephen D. Milbrath (expert witness) at Doc. 192. As part of the attorney's fees award, the Court requested the Plaintiff to address concerns over

double billing, incorrectly applied law, failure to delineate between billing on patent and trademark case and submitting inconsistent totals for both the amount of attorney hours and fees sought.

  II.  **Law on Issues With Respect To Awarding Attorney's Fees & Other Costs Not Covered By A Bill Of Costs As Attorney's Fees.**

  Within this Circuit, a district court determining an attorney's fee award must consider the following twelve factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.1974), *abrogated on other grounds*, *Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). Although the district court must examine each of the *Johnson* factors, it is not obligated to adjust a fee upward or downward in every instance where one or another of the factors is found to be present. *Marion v. Barrier*, 694 F.2d 229, 231 (11th Cir. 1982).

  In order to arrive at an award of attorney's fees, the Court must first calculate the lodestar by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate for the attorney's services. *See Hensley,* 461 U.S. at 433, 103 S.Ct. 1933; *Barnes,* 168 F.3d at 427. This Court may then adjust the lodestar upward or

downward based on other considerations, including the results obtained and the quality of the representation. *See Hensley,* 461 U.S. at 434-435, 103 S.Ct. 1933; *Barnes,* 168 F.3d at 427; *Loranger,* 10 F.3d at 781; *Norman,* 836 F.2d at 1302. The reasonable hourly rate is defined as the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Barnes,* 168 F.3d at 436 (*quotations omitted*). The fee applicant bears the burden of establishing the claimed market rate. *See Barnes,* 168 F.3d at 427. Proof of the market rate may be comprised of testimony and direct evidence from other legal practitioners in the relevant legal community who are familiar with the type of legal service provided and the prevailing market rate for such work. *See Norman,* 836 F.2d at 1299. A court may also use its own judgment and expertise to make an appropriate independent assessment of the value of an attorney's services. *See Id.* at 1303.

### III.   Legal Fee Structure & Legal Analysis.

On September 16, 2005, the Plaintiffs served the Defendant with a cease and desist letter with respect to use of the Plaintiffs' trademark VasoPulse.®. [Plaintiff's Trial Exhibit 9]. The Defendant filed a Petition to Cancel the Mark with the United States Trademark Trial & Appeals Board on October 5, 2005. [Plaintiff's Trial Exhibit 9]. On September 28, 2006, the Plaintiffs filed their Complaint and sought a temporary injunction which was granted on December 19, 2006. [Doc. 63].

The Plaintiffs executed a written fee agreement on October 5, 2005 with the law firm of Rappel & Rappel, P.A. At the time of entry of the fee arrangement, the Plaintiffs became indebted to pay attorney's fees at an hourly rate to a fee cap of $55,000 and

thereafter, once the fee cap was met, the fee would become a contingency fee at a minimum of 33.33%. On December 28, 2005, the Plaintiffs assigned their fee agreement to Rappel Health Law Group, P.L. which agreed to honor the previous contract. A copy of the Fee Agreement and Re-Assignment is attached to the Affidavit of Craig M. Rappel. On or about October 12, 2006, the Plaintiffs reached their fee cap and the employment of legal counsel continued under the contingency fee provisions of the arrangement. [See time entries attached to the Affidavit of Craig Rappel].

On April 9, 2009, the Plaintiffs elected to proceed to only seek a permanent injunction as to the trademark infringement cause of action since, as previously known from evidence, the Plaintiffs sell their patented product device (ProElecDT) with the VasoPulse 2000 device as a package. [Doc. 113; Doc. 173 at Page 249, Lines 10 – 16 and Page 261, Lines   15 - 20].

**A.  The time and labor required.**

The time and labor required was significant. Detailed discovery commenced in the action before the Trademark Trial & Appeals Board action; additionally, a preliminary injunction application was made which required an evidentiary hearing. Further a motion to stay the proceedings in the Trademark Trial & Appeals Board action had to be made as the Defendant initially opposed such application for stay and that matter is still currently monitored by the Trademark Trial & Appeals Board. Finally, the Defendant refused to concede to a permanent injunction requiring the parties to prepare for Pre-Trial procedures and ultimately, this Court had to endure a bench trial on the issue.

4

### B. The novelty and difficulty of the questions.

With respect to the trademark issue, the Plaintiffs were faced with the Defendant selling a similar product (a vaso-pneumatic device) in tangent with an electrical stimulation device. (e.g., Hako-Med's ProElectDT and VasoPulse 2000 vs. Axiom's EPS8000 and NVP8500). Additionally, the Defendant announced that its NVP8500 device was known as "Axiom's Vaso Pulse System" [Plaintiff's Trial Exhibit 7]. The Defendant's device included many of the same buttons and other dress features as the Plaintiff's device as well. Plaintiffs wrote a simple "cease and desist letter". The Defendant countered by filing an administrative action with the Government in October of 2005 to cancel the Plaintiff's mark.

The Defendant claimed the trademark was "descriptively misleading". Additionally, the Plaintiffs felt they were faced with bringing allegations of not just on trademark but trade dress as well and proceeded to file the present suit. The Plaintiffs moved to stay the trademark board proceedings after filing suit in this case and the Defendant's opposed this action with the Trademark Trial & Appeals Board.

The Plaintiffs then proceeded to seek an injunction for use of the VasoPulse® trademark, yet Defendant continued to use this mark up to approximately late October 2006 once the Magistrate Judge issued her recommendation to this Court.

Since this matter involved a medical device and especially since the trademark is used in tandem with another medical device involving a patent, it is a novel matter and contains difficult questions when faced with Defendant's attempt to use a trademark but then claim the mark is descriptively misleading. Further the Defendant attacked the

validity of the patent on summary judgment and had the companion patented product failed for invalidity, the companion device (VasoPulse 2000) and its associated mark could have become worthless.

### C. The skill required to perform the legal service properly.

It is obvious that much still is required in the field of intellectual property. One need only read Defendant's counsel's website to know the complexities involved in intellectual property. Further, medical terminology as well as purpose of the device in the field of medicine and healthcare industry is also required and Plaintiff's choice of lawyers was equally important. Therefore, high skill is required to perform the legal service properly.

### D. The preclusion of other employment by the attorney due to acceptance of the case.

It is difficult to gage the preclusion of other employment and on certain circumstances, revealing the preclusion can violate attorney-client confidentiality. What is revealed is that counsel for Plaintiffs lost an associate lawyer, Jennifer Peshke, shortly after prevailing on the temporary injunction and after the matter entered into a contingency fee arena; that Craig Rappel handled the matter personally without assistance. The Court can see the amount of hours involved and can glean from the time entries that indeed, other employment opportunities were precluded by the acceptance of this case.

### E. The customary fee.

As noted by the Plaintiff's expert witness, Stephen D. Milbrath, the customary fee in a trademark matter involving a medical device, and especially since the mark is used in

tandem with another medical device involving a patent, is an hourly fee arrangement as opposed to a contingency fee or even a mixed fee arrangement. Further, the customary hourly rate within this District and especially for maters tried in Tampa, Florida is upward to $400.00 per hour.

### F. Whether the fee is fixed or contingent.

The fee is this matter was not fixed. The fee was contingent if the matter proceeded beyond $55,000 in hourly fee billing. In essence, the fee arrangement was designed to encourage early resolution and indeed, if recovery was made early, i.e., the attorney would not be entitled to any contingent recovery at all. The risk would exist if the Axiom defendant refused to concede early and entered protracted litigation, which it did.

### G. Time limitations imposed by the client or the circumstances.

The use of the Associate was vital in the early stages of this action in order to keep attorney's fees low in preparation of preparing an infringement action since Plaintiffs' mark was strong and it was facing a "strike suit" to cancel its mark. Therefore, the client was not charged all of the attorney's fees time at the attorney hourly rate of $325.00 through the time of reaching the fee cap but rather the client was mostly charged at the rate of $155.00 per hour until approximately October of 2006.

### H. The amount involved and the results obtained.

The results obtained were positive and the Plaintiffs received a permanent injunction as to the trademark issue after a bench trial. The Court should note that the fee cap would not have been reached around time the Plaintiffs filed this instant suit on

patent and trademark infringement had Defendant not filed its action to cancel the trademark with the Government such that an early result of obtaining a temporary injunction with this Court on the trademark would certainly have been met below the amount of $55,000 in attorney's fees.

> **I. The experience, reputation, and ability of the attorneys; the undesirability of the case; the nature and length of the professional relationship with the client; and awards in similar cases.**

The Plaintiffs' counsels' curriculum vitae are contained as attached to the Affidavit of Craig M. Rappel at Doc. 192. Their experience, reputation and ability are not in question. The length of the professional relationship with the client was over 3 years. This matter involved injunctive relief and plaintiffs' counsel have had experience in prosecuting and defending injunctive relief actions in both state court and federal court with respect to health law issues. *See Gonzalez v. Cardiology Physician*, et al, 6:02-cv-00896-GKS-DAB; *Gold, Vann & White, P.A. v. Friedenstab*, 831 So.2d 692 (Fla. 4th DCA 2002).

> **J. Miscellaneous.**

The Plaintiffs' chosen law firm is a small law firm with experience in health law whereas the Defendant's firm is a large law firm with experience in intellectual property. Whilst intellectual property issues are involved in health law, this matter is primarily in the field of intellectual property such that the Plaintiffs' law firm was more heavily burdened by the "strike suit", i.,e., petition to cancel the trademark as would otherwise existed had Plaintiff simply filed the instant law suit

.

### K. The calculation of the revised attorney's fees based on Court's Order at Doc 200.

Under normal circumstances, a line by line analysis would be provided to this Court to address detailed information concerning the services provided but with the filing of the Defendant's Assignment for the Benefit of Creditors, (Doc. 198) the Plaintiffs state that the Court, for judicial economy, should simply enter the amount sought in the Joint Pre-Trial Statement of $40,369.50 (Doc. 129, Page 17) plus at least the additional amount hours for Craig Rappel at his rate of $325.00 per hour after the date of the filing of the Joint Pre-Trial Statement as follows:

1. .5 for appearance at the Pre-Trial Conference.

2. 1 hour for preparation of bench trial exhibits.

3. .5 for the bench trial. (Although the Court spent almost an hour)

4. 1 hour for the bench trial brief on enhancement.

This would make the attorney's fees request at $41,344.50 before the additional cost request below. These amounts are definitely "less than $50,000" as indicative of the Court. (Doc. 200).

Based on the expert Affidavit of Stephen Milbrath, the attorney's fees amount for the time spent by Plaintiffs' counsel amounted to $148,611.63; although the Court has already indicated that it believed this amount to be excessive. The Plaintiffs apologize to the Court as to the Court's concerns but state that Mr. Milbrath did not express the same views of the Court as contained in his Affidavit and "double billing", etc. was never pointed out by Mr. Milbrath to Plaintiffs as Mr. Milbrath had extensively reviewed the file and time records of Plaintiffs' counsel and is a Board Certified Business Litigation

attorney and practices in intellectual property matters in this District. Additionally, the Defendants, although objected to the amount request, did not disclose their time and fees expensed by the Defendant, which Plaintiffs believe have far exceeded $50,000 as to the trademark issue alone.

### i. Costs.

Plaintiffs had filed a Bill of Costs pursuant to 28 U.S.C. §1920. Costs for mediation are not subject to said taxation; however, even if there was no patent infringement claim, but simply the trademark claim, the Plaintiff would have been subject to having to mediate the matter. As a result, it bore costs for which it should not have borne and this Court should award those costs as part of the attorney's fees. *Harbaugh v. Greslin*, 365 F.Supp.2d 1274 (S.D. Fla. 2005).

There were two mediations in this matter and, at minimum, one-half of the costs of those mediator fees should be award as additional attorney's fees. Based on the Affidavit of Craig M. Rappel, those amounts are in total of $1,275.00. (See Doc. 192).

### IV. Pre-Judgment Interest.

Eleventh Circuit precedent establishes that prejudgment interest may be awarded in the discretion of the court, and that courts are not required to use 28 U.S.C. § 1961 in computing such interest. *See Industrial Risk Insurers v. MAN Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1446 (11th Cir.1998) ("Awards of prejudgment interest are equitable remedies, to be awarded in the district court's sound discretion.").

This Court has previously awarded a pre-judgment interest amount at 5.5% compounded annually and should do so in this case from September 25, 2005, the date that the Defendant filed its action to cancel the VasoPulse trademark.

**V.     Conclusion.**

The Court should issue a Final Judgment with respect to attorney's fees as to the trademark matter in the total sum of $42,619.50plus prejudgment interest at a minimum of 5.5% compounded annually from September 25, 2005.

Dated this 3rd day of  May, 2010.

s/Craig M. Rappel

CRAIG M. RAPPEL, TRIAL COUNSEL
Florida Bar No. 0752428
ROBERT RAPPEL, D.O., J.D.
Florida Bar No: 015156
Attorneys for Plaintiffs
Rappel Health Law Group, P.L.
Bridgewater
1515 Indian River Boulevard
Suite A210
Vero Beach, Florida 32960-7103
Telephone: 772.778.8885
Fax: 772.778.8883
cmr@rappelhealthlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this May 3, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Mitch Robiner, Esq.
L. Joseph Shaheen Jr., Esq.
Ackerman, Senterfitt
401 E. Jackson St. Ste. 1700
Tampa, Florida 33602-5803
Telephone:    813-223-2837
Mitchell.Robiner@Akerman.com
Joseph.Shaheen@Akerman.com

Patrick J. Arnold Jr. *(Pro Hac Vice)*
David Z. Petty *(Pro Hac Vice)*
McAndrews Held & Malloy, Ltd.
500 West Madison Street, 34th Floor
Chicago, Illinois 60661
Telephone: 312-775-8000
Fax: 312-775-8100
parnold@mhmlaw.com
dpetty@mhmlaw.com

        s/ Craig M. Rappel
        CRAIG M. RAPPEL, ESQ.
        Florida Bar No. 0752428
        Attorneys for Plaintiffs